KASOWITZ LLP
Jason S. Takenouchi (234835)
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030
JTakenouchi@kasowitz.com

Mitchell R. Schrage (*pro hac vice* application to be submitted)
Alana S. Klein (*pro hac vice* application to be submitted)
1633 Broadway
New York, New York 10019
MSchrage@kasowitz.com
ASKlein@kasowitz.com

Attorneys for Plaintiff
BESWEET CREATIONS, INC. D/B/A/ SUGARBEARPRO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BESWEET CREATIONS, INC. D/B/A SUGARBEARPRO, a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>CATALENT WELLNESS CALIFORNIA, LLC, a California limited liability company; CATALENT WELLNESS, LLC, a Delaware limited liability company; CATALENT PHARMA SOLUTIONS, LLC, a Delaware limited liability company; CATALENT PHARMA SOLUTIONS, INC., a Delaware corporation; and CATALENT INC., a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1) **BREACH OF CONTRACT**<br><br>2) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>3) **FRAUD**<br><br>4) **FRAUDULENT INDUCEMENT**<br><br>5) **NEGLIGENT MISREPRESENTATION**<br><br>6) **UNFAIR COMPETITION**<br><br>7) **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**<br><br>8) **UNJUST ENRICHMENT** |

Plaintiff BeSweet Creations, Inc. d/b/a SugarbearPRO ("Sugarbear" or "Plaintiff"), for its complaint against defendants Catalent Wellness California, LLC; Catalent Wellness, LLC; Catalent Pharma Solutions, LLC; Catalent Pharma Solutions, Inc.; and Catalent, Inc. (collectively "Catalent" or "Defendant"), alleges as follows:

## I. PRELIMINARY STATEMENT

1. Sugarbear is a premier beauty and wellness brand specializing in vitamin-based supplements that are made in the United States with organic and plant-based ingredients. The company spent years of effort, and millions of dollars, establishing a reputation for reliability, vibrant aesthetics and high-quality ingredients, and building significant brand equity around its signature blue-colored Hair Vitamin.

2. For years the Sugarbear products[1] were produced by a facility in San Francisco at 250 Hillside Boulevard in South San Francisco (the "Hillside Facility") without any problems. That all changed after defendant Catalent took over the facility in late 2021.

3. In the months following that transition, customers began to notice problems with the color and taste of Sugarbear products. When Sugarbear raised these concerns with Catalent in 2021 and 2022, Catalent assured Sugarbear that these were isolated problems, and insisted that Catalent's Hillside Facility was fully capable of producing the same high-quality products that Catalent's predecessors had produced.

4. In fact, as Catalent knew at the time and concealed from Sugarbear, there were major problems with quality control at the Hillside Facility. Those problems, which would later lead Catalent to shut down the facility entirely, made the facility unfit for the production of Sugarbear products.

5. Catalent was also concealing other critical problems. For example, shortly after it took over the Hillsdale Facility in 2021, Catalent decided to change the proportions of the ingredients for Sugarbear products *without testing the impact of those changes*. Catalent never sought Sugarbear's approval for the changes, concealed the changes from Sugarbear, and later

---

[1] Sugarbear's products included Hair Vitamin, Sleep Vitamin, Women's Mulitvitamin and ProCollagen Vitamin.

- 2 -

COMPLAINT

KASOWITZ LLP
ATTORNEYS AT LAW
SAN FRANCISCO

insisted that it did not make any changes. Those changes, when combined with Catalent's defective quality control practices, undermined the look, consistency and taste of the Sugarbear products.

6. Sugarbear relied on Catalent's false statements and fraudulent omissions when it continued to pay Catalent millions of dollars to produce Sugarbear products in 2021 and 2022. Had Catalent told the truth at the time, Sugarbear would have found another manufacturer, would have ceased its relationship with Catalent, and would have demanded immediate repayment of all the money it had sent to Catalent due to Catalent's fraud.

7. In 2022 Catalent produced a new batch of products after making additional changes to the recipe. Catalent concealed that it had not tested the effect of these changes, and in the following months the new formulation resulted in new problems. Catalent would later admit the change was "unvalidated."

8. Around that same period Catalent was also being examined by the Food and Drug Administration, but Catalent concealed that from Sugarbear. But in 2023, after the FDA revealed widespread problems with Catalent's operations, Catalent admitted to Sugarbear that the Hillside Facility had been struggling with critical quality control problems for a long time, and that Catalent planned to shut the facility down.

9. Catalent promised that it would soon open a new facility in Greendale, Indiana (the "Indiana Facility") that could supply the quality products that the Hillside Facility could not. But that, too, was a lie—in fact, Catalent knew its new facility faced similar quality control problems that plagued Catalent's other facilities, and it knew the Indiana Facility would likely be unable to provide products that met Sugarbear's specific certification needs.

10. Sugarbear, which was already having severe supply problems due to Catalent's failures, issued another purchase order. Catalent delayed delivery of the products for months. When Catalent finally sent the products, they tasted like rotten fish, and the texture was inconsistent with past Sugarbear products. And Catalent knew—but concealed from Sugarbear— that the Indiana Facility lacked necessary certifications.

11. This lawsuit arises from Catalent's fraud and deception, and its flagrant breach of its contractual obligations to properly manufacture Sugarbear's vitamin-based supplements. Catalent's misconduct resulted in the scrapping of massive quantities of Sugarbear products, the deep discounting of other products, and substantial damage to the Sugarbear brand and reputation.

## II.  PARTIES

12. Plaintiff BeSweet Creations, Inc. d/b/a SugarbearPRO is incorporated in the State of Florida and headquartered in Oakland Park, Florida.

13. Defendant Catalent Wellness California, LLC, is a California limited liability company. On information and belief its members are New Jersey entities or individuals; none are residents of California.

14. Defendant Catalent Wellness, LLC, is a Delaware limited liability company with its primary office in the State of New Jersey.

15. Defendant Catalent Pharma Solutions, LLC, is a Delaware limited liability company with its primary office in the State of New Jersey.

16. Defendant Catalent Pharma Solutions, Inc., is Delaware corporation with its primary office in the State of New Jersey.

17. Defendant Catalent, Inc., is a Delaware corporation with its primary office in the State of New Jersey.

18. The Catalent entities ignored any distinctions between and among themselves with respect to Sugarbear. Among other things, personnel who were employed by different Catalent entities all interacted with Sugarbear as if they were a single entity, and sent correspondence and proposed agreements as if they were a single entity. The Catalent entities and also ignored corporate distinctions in their production, distribution and sale of products. Because these entities acted as alter egos of each other, each is liable in full for the actions of the others with respect to the misconduct and failures alleged herein.

## III.  JURISDICTION AND VENUE

19. Jurisdiction is proper in this court under 28 U.S.C. §1332 because this is a dispute between citizens of different states and the amount in controversy exceeds $75,000.

20. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to Sugarbear's claims occurred in this district.

21. This Court has personal jurisdiction over Catalent because, *inter alia*, Catalent: (a) produced and shipped the products at issue from a facility in this district; (b) purposefully directed its relevant activities to and from a facility in this district; and (c) participated in the relevant misconduct from and directed to a facility in this district.

## IV.   STATEMENT OF FACTS

### A.   2015-2021:  Sugarbear Builds A Global Brand

22. Sugarbear was founded in 2015 and was immediately successful with the introduction of its first-to-market, iconic blue vegan Sugarbear Hair Vitamin gummy, breaking new ground in the vitamin supplement industry.  Indeed, the Sugarbear Hair Vitamin has been the leading gummy vitamin on Amazon since the Sugarbear's Amazon launch in early 2016.  In addition to its iconic Hair Vitamin, the Sugarbear brand also includes Women's Multivitamin, Sleep and Collagen supplements. All of the Company's products are vegan, halal and kosher-certified.

23. The Sugarbear brand earned a reputation for reliability, vibrant aesthetics, and high-quality ingredients, building significant brand equity around its signature custom Sugarbear blue gummy Hair Vitamin.  The bright blue hue of the Hair Vitamin was so distinctive and recognizable in the marketplace that the company was awarded trade dress protection by the United States Patent and Trademark Office ("USPTO") for the blue color of its gummies.

24. Since the company's inception, all of the Sugarbear vitamin supplements had been produced at the Hillside Facility, which was first owned by Gimbal Brothers LLC ("Gimbal's"), then by Bettera Brands, LLC ("Bettera").  Catalent acquired Bettera and took over control of the Hillside Facility around August 2021.

25. Until Catalent acquired Bettera, Sugarbear experienced no production defects and had no cause for dispute concerning the Hillsdale Facility.  For years Sugarbear made prompt payment in receipt of consistently good and compliant product.

26. Starting around August 2021, Sugarbear and Catalent engaged in a series of transactions for the manufacture and delivery of Sugarbear's iconic blue vitamin gummies. For each such order, Sugarbear would first issue a purchase order to Catalent identifying the key terms of the transaction, including the specific product and quantity to be purchased, the price, and the details for where the product should be shipped. After receiving each purchase order, Catalent would produce the product, ship the product to Sugarbear and issue an invoice.[2] None of the Catalent invoices were ever signed by anyone at Sugarbear. After receiving the product, Sugarbear would pay the amount specified in the original purchase order. This process was repeated for each purchase order issued by Sugarbear during the relevant time period, with each transaction operating as an independent written contract.

27. From Fall 2021 through 2024, Sugarbear paid millions of dollars to Catalent based on these purchase orders.

**B.    2021-2023:  Catalent Conceals Recipe Changes And Quality Control Failures From Sugarbear**

28. After Catalent acquired the Hillside Facility, it decided to change the recipes for the Sugarbear products by adjusting the proportions of certain ingredients, and by using a new supplier for some ingredients. Catalent did not perform any testing before making the change. It did not notify Sugarbear of the change; in fact, it later denied that it made any change.

29. During that same period Catalent learned that the Hillside Facility—along with other facilities that Catalent had acquired—were suffering from critical quality control problems. Catalent concealed this from Sugarbear, and instead continued to tout its supposed high quality standards to Sugarbear.

30. In late 2021 Sugarbear began receiving complaints from Sugarbear customers that their gummies appeared old and off color. Sugarbear notified Catalent in writing of these complaints. Sugarbear told Catalent that such color issues could result in mass customer confusion, since color and taste were the key criteria for customer recognition of a vitamin

---

[2] Throughout 2021, the invoices Catalent issued to Sugarbear still bore the name "Bettera Brands" even though Catalent began operating the Hillside Facility around August 2021.

product in the marketplace, particularly given that Sugarbear had obtained trade dress protection from the USPTO for the iconic blue Sugarbear gummy. And Sugarbear told Catalent that it had to pay substantial chargebacks, and meet customer demands for refunds, due to the appearance of the products.

31. Catalent's response to these concerns was a lie. Catalent insisted (falsely) that these were isolated incidents, and it continued to conceal its ongoing quality control problems and its unilateral decision to make an untested change to the Sugarbear recipe.

32. Catalent knew at the time that Sugarbear had spent millions of dollars on marketing its signature blue gummy and other vitamin supplements, leveraging celebrity endorsements, influencer campaigns, and proprietary branding to solidify the Sugarbear brand's reputation in the marketplace. Catalent knew that its fraud and incompetence would undermine that reputation, resulting in Sugarbear sustaining millions of dollars in damages including, but not limited to, the downstream loss of revenue and shelf space, and erosion of customer loyalty for all if its products.

33. During this period, even as Catalent was concealing its fraud and unauthorized recipe changes, Catalent refused to credit or reimburse Sugarbear for the cost of the defective product incurred as a result of Catalent's production failures, defective product and material breaches of its contractual obligations. Catalent instead represented to Sugarbear that it would ensure that it manufacture products that complied with specifications and regulatory requirements without compromising the safety, identity, strength, quality or purity of Sugarbear's products—a promise that Catalent knew it could not keep, and that it did not keep.

34. Unbeknownst to Sugarbear, Catalent was under scrutiny from the Food and Drug Administration (FDA) for quality control issues.[3] The FDA's investigation of Catalent's facilities later revealed scores of deviations from quality control standards.

35. Sugarbear, which was unaware of the FDA investigation, continued placing orders and proceeded with payment on invoices in reliance on Catalent's representations. However, the

---

[3] *See* https://www.reuters.com/markets/deals/us-fda-finds-control-lapses-catalent-plant-being-sold-novo-2024-02-06/

subsequent products were even worse—gummies were received with crusty texture, rotten fish taste, and strong off-putting odors that were inconsistent with Sugarbear's specifications. These defects rendered the product unsellable, of no commercial value, and ultimately unfit for distribution. Much of the inventory had to be held back and destroyed.

36. The FDA released its findings in late 2023, describing widespread problems with Catalent's operations. Only then did Catalent admit to Sugarbear that the Hillside Facility, like Catalent's other facilities, had been struggling with critical quality control problems for a long time, and that Catalent planned to shut the Hillside Facility down.

37. In an effort to keep Sugarbear's business, Catalent promised that its Indiana Facility could supply the quality products that the Hillside Facility could not. But that, too, was a lie—in fact, Catalent knew its Indiana Facility faced the same quality control problems that plagued Catalent's other facilities, and it knew the Indiana Facility would likely be unable to procure the certifications necessary to produce Sugarbear's products.

38. Sugarbear, which was already having severe supply problems due to Catalent's failures, issued another purchase order. Catalent delayed delivery of the products for months. When Catalent finally sent the products, they tasted like rotten fish, and the texture was inconsistent with past Sugarbear products. And Catalent knew—but concealed from Sugarbear—that the Indiana Facility lacked necessary certifications.

C. **February 2025: Catalent Asserts That Transactions From 2023 To 2024 Were Governed By An Arbitration Clause In A Document That Sugarbear Never Signed Or Acknowledged**

39. In 2024 Sugarbear continued to struggle to repair the reputational and brand harm caused by Catalent's failures and misconduct. At the same time, Catalent refused to repay Sugarbear for the millions of dollars of defective products that Sugarbear had been fraudulently induced into ordering and paying for.

40. In early 2025 Catalent demanded payment for the latest batch of its defective products. Catalent asserted that the dispute had to be resolved in a private arbitration, rather than in a publicly accessible court proceeding, under a set of Terms and Conditions that Catalent

1  issued in March 2023 (the "Terms and Conditions"). In fact, Sugarbear never signed the Terms
2  and Conditions, never negotiated them with Catalent, and never acknowledged or agreed that they
3  would be incorporated into the parties' purchase order transactions.

4      41.    Sugarbear's purchase orders—not Catalent's Terms and Conditions—constitute
5  the parties' separate written contracts. Catalent's fraudulent inducement of those purchase orders,
6  and its breach of them, are not arbitrable.

        **D.**    **Catalent Suffered Tens Of Millions Of Dollars In Damages From Catalent's Fraud, Incompetence And Breaches Of Contract**

    42.    As described above, Catalent's fraud, unauthorized and untested changes to product recipes, and inability to properly produce products in accordance with Sugarbear's purchase orders caused major customer confusion over the authenticity and quality of the Sugarbear products that Catalent manufactured.

    43.    Sugarbear sustained millions of dollars in damages as a result of Catalent's fraud, incompetence and breaches of contract. This includes millions of dollars in defective and unsellable products as well as millions of dollars in brand and reputational damage.

    44.    Sugarbear brings this action to bring Catalent to account for its misconduct, and to recover these millions of dollars in losses.

## FIRST CLAIM FOR RELIEF

### (Breach Of Written Contracts)

    45.    Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

    46.    Starting in August 2021, Sugarbear and Catalent entered into series of written contracts for the purchase and sale of goods. Specifically, Sugarbear issued separate purchase orders, Catalent produced and shipped defective product to under those purchase orders, and Sugarbear paid those purchase orders in full.

    47.    Sugarbear performed all of its obligations under the parties' agreements.

48. Catalent materially breached the parties' contracts by, among other things: changing product inputs without approval or appropriate testing, altering Sugarbear gummies' identity, quality, smell, taste and appearance without Sugarbear's approval, delivering defective products, and violating regulatory requirements in the production of Sugarbear's products.

49. As a direct and proximate result of Catalent's actions, Sugarbear suffered extensive damages in an amount to be proven at trial but, in any event, not less than tens of millions of dollars.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

**(Breach Of The Implied Covenant Of Good Faith And Fair Dealing)**

50. Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

51. The series of agreements between Sugarbear and Catalent—embodied in purchase orders—included an implied covenant of good faith and fair dealing.

52. Catalent engaged in bad faith and breached of the implied covenant of good faith and fair dealing by, among other things:

    i.    concealing quality control problems at its facilities, and misrepresenting its ability to produce quality products in response to Sugarbear's purchase orders;

    ii.    altering the established recipes of Sugarbear products in a manner that was detrimental to the Sugarbear brand;

    iii.    frustrating the relationship between the parties by failing to provide Sugarbear with proper written notice prior to making changes or deviations that significantly affected the quality of the products;

    iv.    failing to notify Sugarbear about production defects and color and taste changes in products – a failure that caused belated discoveries of product

               defects only once the products were already in the hands of the customer and incapable of being cured; and

        v.     failing to conduct proper testing and trials on product before commercial distribution.

53. Catalent had an obligation to be transparent about its actual ability to produce Sugarbear's products and to communicate any deviations or changes that affect its capabilities to do so. Instead, Catalent concealed its material changes to the products, and failed to disclose its quality control and manufacturing issues, until Catalent could no longer cure.

54. As a result of Catalent's breach of the implied covenant of good faith and fair dealing, Sugarbear has been damaged in an amount to be proven at trial but, in any event, not less than tens of millions of dollars.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF

### (Fraud)

55. Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

56. As set forth above, Catalent's conduct involved multiple false representations of fact made to Sugarbear which Catalent knew to be false and were made recklessly and with the intent to induce Sugarbear into paying for product that Catalent knew to be untested, nonconforming, and of defective quality.

57. Sugarbear reasonably relied on Catalent's false statements, representations and assurances about the quality, testing, specifications and certifications of the products Catalent produced and delivered when Catalent paid on the purchase orders after Catalent's deliveries of the defective products.

58. As a direct and proximate result of Catalent's fraud, Sugarbear suffered extensive damages in an amount to be determined by the trier of fact but, in any event, not less than tens of millions of dollars.

59. Additionally, because Catalent's fraud was intentional, malicious, oppressive, or fraudulent, they give rise to liability for exemplary and punitive damages, which Sugarbear seeks, and is entitled to recover, according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CLAIM FOR RELIEF

### (Fraudulent Inducement)

60. Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

61. As set forth above, Catalent concealed quality control problems at the Hillsdale Facility, its unauthorized and untested recipe changes, and its failure to test the products it shipped to Sugarbear. Catalent also falsely stated that its Indiana Facility could produce products with the quality, consistency or certifications required by Sugarbear, when in fact Catalent either knew that the facility did not have that capability or had no basis to believe that it could. Catalent also falsely assured Sugarbear of its intent to make the corrections necessary to enable its facilities to produce products with the quality and certifications that Sugarbear required. But Catalent had no intention to follow through on such commitments.

62. Catalent's acts of fraudulent concealment induced Sugarbear to not terminate its business relationship with Catalent, to continue issuing purchase orders to Catalent, and to continue to pay millions of dollars for products that Catalent knew were unsellable, nonconforming and otherwise defective.

63. Catalent knew at the time it made the omissions and misrepresentations to Sugarbear that they were false and misleading. Catalent made them with the intent of inducing Sugarbear to engage in further transactions, to not cancel pending transactions, and to pay millions of dollars for products that were defective and not in compliance with the agreed to formulas.

64. Sugarbear reasonably relied on Catalent's misrepresentations and omissions when it submitted further purchase orders, did not cancel pending purchase orders, and paid Catalent

for orders.

65. As a direct and proximate result of Catalent's fraudulent inducement, Sugarbear suffered extensive damages in an amount to be proven at trial but, in any event, not less than tens of millions of dollars.

66. Additionally, because Catalent's fraudulent inducement was intentional, malicious, oppressive, or fraudulent, it gives rise to liability for exemplary and punitive damages, which Sugarbear seeks, and is entitled to recover, according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **FIFTH CLAIM FOR RELIEF**

### **(Negligent Misrepresentation)**

67. Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

68. As described above, Catalent engaged in fraud and fraudulent concealment in its dealings with Sugarbear.

In the alternative, Catalent made its misrepresentations without reasonable grounds for believing they were true and in a manner not warranted by the information in Catalent's possession. These negligent misrepresentations included misrepresentations that Catalent's facilities were able to properly manufacture Sugarbear's products, that Catalent's shipped products had been fully tested and were consistent with Sugarbear's approved formulas, and that Catalent's facilities had the certifications necessary to manufacture Sugarbear's products.

69. Sugarbear did not discover the falsity of these negligent misrepresentations until 2023.

70. As a direct and proximate result of Catalent's misconduct, Sugarbear suffered extensive damages in an amount to be proven at trial but, in any event, not less than tens of millions of dollars.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition)

71. Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

72. California Business and Professions Code Section 17200 *et seq.*, the Unfair Competition Law (the "UCL"), prohibits unfair competition, which includes any unlawful, unfair and/or fraudulent acts or practices and any unfair, deceptive, untrue or misleading advertising.

73. Catalent violated the UCL by falsely representing that the products were of the quality and composition agreed to by the parties, were free of any significant defects or conditions which impair the use, value, or efficacy, and were reasonably fit for their intended use.

74. Catalent also violated the UCL by fraud and fraudulent inducement, as described above.

75. Catalent further violated the UCL by selling products that it manufactured in violation of applicable state and federal law, including regulations requiring proper change control and validation.

76. The UCL provides for restitution for violations. Sugarbear therefore seeks an order Catalent restore all property which it acquired by means of the unfair competition described herein. This includes, at a minimum, all money paid by Sugarbear to Catalent.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF

### (Breach Of Implied Warranty of Merchantability)

77. Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

78. By operation of law, Catalent, as the manufacturer and seller of Sugarbear's products, impliedly warranted to Sugarbear that the Sugarbear products were of merchantable quality and safe for their intended use.

79. Such implied warranty of merchantability, contained in California Civil Code Section 1791.1, requires that the products sold to Sugarbear be reasonably fit for their ordinary purpose and of good and merchantable quality.

80. Catalent breached the implied warranty of merchantability in that the Sugarbear products sold by Catalent were not merchantable nor reasonably fit for ordinary consumption for the following reasons: (i) the products were inedible; (iii) the products appeared off color, causing customers to question the quality and authenticity of the product; and (iv) the recipes used by Catalent significantly deviated from the established recipes. The products were substantially defective when Catalent sold them to Sugarbear.

81. As described above, Catalent concealed and misrepresented the quality, composition and testing of the products it provided. Had Sugarbear known the truth, Sugarbear would not have purchased them or paid for them. Sugarbear did not discover the full truth about the composition of the products, and their resulting lack of merchantability, until 2023 and 2024.

82. As a direct and foreseeable result of Catalent's breach of warranty, Sugarbear suffered, and continues to suffer, direct, incidental and consequential damages which include the price paid for the non-conforming Vitamin Gummies, monetary damages, the costs of this action and attorney's fees. Sugarbear's damages are not less than tens of millions of dollars.

WHEREFORE, Plaintiff prays for relief as set forth below.

## EIGHTH CLAIM FOR RELIEF

### (Unjust Enrichment)

83. Sugarbear incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

84. Catalent has been enriched by Sugarbear's ongoing relationship with Catalent.

85. Sugarbear paid millions of dollars to Catalent for defective products that were ordered as a result of Catalent's fraudulent misrepresentations and omissions. It is unjust for Catalent to retain the benefits conferred by Sugarbear.

86. As a direct and foreseeable result of Catalent's conduct, Sugarbear is entitled to an order restoring to it any money obtained by Catalent as a result of its misconduct.

WHEREFORE, Plaintiff prays for relief as set forth below.

## JURY DEMAND

Sugarbear demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Sugarbear prays that defendant Catalent be cited to appear and answer herein, and Sugarbear recovers judgment against Catalent as follows:

1. Actual, indirect, economic, consequential and compensatory damages in an amount to be determined at trial;

2. Restitution of all amounts paid by Sugarbear to Catalent;

3. Punitive and/or exemplary damages;

4. Reasonable and necessary attorneys' fees;

5. Pre- and post-judgment interest at the maximum rate allowed by law;

6. All costs of suit; and

7. All such other and further relief, both general and special, at law or in equity, that this Court may deem appropriate.

| | |
|---|---|
| Dated: August 1, 2025 | KASOWITZ LLP<br><br>By: /s/ Jason S. Takenouchi<br>　　　Jason S. Takenouchi<br><br>Jason S. Takenouchi (234835)<br>101 California Street, Suite 3950<br>San Francisco, California  94111<br>Telephone:   (415) 421-6140<br>Facsimile:    (415) 398-5030<br>JTakenouchi@kasowitz.com<br><br>Mitchell R. Schrage (*pro hac vice* application to be submitted)<br>Alana S. Klein (*pro hac vice* application to be submitted)<br>1633 Broadway<br>New York, New York  10019<br>MSchrage@kasowitz.com<br>ASKlein@kasowitz.com<br><br>Attorneys for Plaintiff<br>BESWEET CREATIONS, INC. D/B/A/ SUGARBEARPRO |