MATTHEW B. MOCK (SBN 316380)
matthew.mock@afslaw.com
JUDY J. BAO (SBN 305560)
judy.bao@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St.
43rd Floor
Los Angeles, CA  90071
Telephone:    213.629.7400
Facsimile:    213.629.7401

Attorneys for Defendants
CATALENT WELLNESS CALIFORNIA, LLC, a
California limited liability company; CATALENT
WELLNESS, LLC, a Delaware limited liability
company; CATALENT PHARMA SOLUTIONS,
LLC, a Delaware limited liability company;
CATALENT PHARMA SOLUTIONS, INC., a
Delaware corporation; and CATALENT INC., a
Delaware corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| BESWEET CREATIONS, INC. D/B/A SUGARBEARPRO, a Florida corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CATALENT WELLNESS CALIFORNIA, LLC, a California limited liability company; CATALENT WELLNESS, LLC, a Delaware limited liability company; CATALENT PHARMA SOLUTIONS, LLC, a Delaware limited liability company; CATALENT PHARMA SOLUTIONS, INC., a Delaware corporation; and CATALENT INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:25-cv-06521-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>[Filed concurrently with (Proposed) Order]<br><br>Hearing Date:    March 30, 2026<br>Hearing Time:    9:30 a.m.<br>Location:    Courtroom C - 15th Fl.<br>Judge:    Honorable Sallie Kim<br><br>Complaint Filed:    August 1, 2025 |

1   **NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

2       PLEASE TAKE NOTICE that the following Motion for Judgment on the Pleadings will be

3   heard on March 30, 2026 at 9:30 a.m., or as soon thereafter as the matter may be heard, in

4   Courtroom C on the 15th Floor of the U.S. District Court for the Northern District of California,

5   located at 450 Golden Gate Avenue, San Francisco, CA 94102, with the Honorable Sallie Kim

6   presiding.

7       Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Catalent Wellness

8   California, LLC, Catalent Wellness, LLC, Catalent Pharma Solutions, LLC, Catalent Pharma

9   Solutions, Inc., and Catalent Inc., (collectively, "Catalent" or "Defendants") move to dismiss the

10  complaint of Plaintiff BeSweet Creations, Inc. d/b/a SugarbearPRO ("BeSweet" or "Plaintiff") with

11  prejudice because any amendment would be futile. The Motion is based on this Notice of Motion,

12  the Memorandum of Points and Authorities in support of the Motion, all papers and records on file

13  with the Clerk or which may be submitted prior to or at the time of the hearing, and any further

14  evidence and argument which may be offered.

15  Dated: February 20, 2026          **ARENTFOX SCHIFF LLP**

16

17                                    By: _____

18                                    Matthew B. Mock
                                      Judy J. Bao
19                                    Attorneys for Defendants

20                                    CATALENT WELLNESS CALIFORNIA,
                                      LLC, a California limited liability
21                                    company; CATALENT WELLNESS,
                                      LLC, a Delaware limited liability
22                                    company; CATALENT PHARMA
                                      SOLUTIONS, LLC, a Delaware limited
23                                    liability company; CATALENT PHARMA
                                      SOLUTIONS, INC., a Delaware
24                                    corporation; and CATALENT INC., a
                                      Delaware corporation

25

26

27

28

ARENTFOX SCHIFF LLP

1

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

2

3

1.  Whether Plaintiff BeSweet's contract and warranty claims (the first, second and seventh claims for relief) should be dismissed because:

4

5

6

    a.  BeSweet failed to plead the required elements for a claim involving the sale of goods under the UCC: its pre-suit rejection of goods or justifiable revocation of its acceptance of goods and Catalent's failure to accept the rejection or revocation;

7

8

9

    b.  BeSweet does not identify any contractual terms that were breached;

    c.  BeSweet's breach of implied good faith and fair dealing claim is duplicative of its breach of contract claim;

10

11

12

    d.  BeSweet's Song-Beverly Consumer Warranty Act claim fails as a matter of law because the Act does not apply to consumables like the edible supplement products at issue here.

13

14

2.  Whether BeSweet's tort claims (the third, fourth and fifth claims for relief) should be dismissed because:

15

16

    a.  California's economic loss rule prohibits BeSweet's tort claims;

    b.  The claims fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.

17

18

19

3.  Whether BeSweet's equitable claims (the sixth and eighth claims for relief) should be dismissed because:

20

21

    a.  BeSweet fails to allege that it lacks an adequate remedy at law;

    b.  Unjust enrichment claims may not be asserted where the parties' relationship is governed by a written agreement, as BeSweet alleges here; and

22

23

24

    c.  Even if the Court construed BeSweet's unjust enrichment claim as a quasi-contract claim, BeSweet does not plead it in the alternative.

25

26

27

28

ARENTFOX SCHIFF LLP

- iii -                     DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR JUDGMENT ON THE
PLEADINGS; MEMORANDUM ISO MOTION

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   RELEVANT BACKGROUND ................................................................... 3

    A.    Procedural Posture. ...................................................................... 3

    B.    Complaint Allegations ................................................................. 4

III.  LEGAL STANDARD ................................................................................ 5

IV.   THE CONTRACT AND WARRANTY CLAIMS FAIL........................... 5

    A.    BeSweet Fails to State a Claim for Breach of a UCC Sale of Goods Contract. ...... 6

    B.    BeSweet Fails to Identify Any Contractual Term That Catalent Breached. .......... 10

    C.    BeSweet's Implied Covenant Claim is Superfluous. .............................. 11

    D.    The Song-Beverly Act Does Not Apply to Consumables..................... 12

V.    THE TORT CLAIMS FAIL. ................................................................... 12

    A.    The Economic Loss Rule Bars BeSweet's Tort Claims........................ 13

    B.    BeSweet Fails to Allege Fraud with Specificity. ............................... 16

    C.    The Fraudulent Inducement Claim Fails for Additional Reasons.......................... 18

VI.   THE EQUITABLE CLAIMS FAIL.......................................................... 19

VII.  CONCLUSION........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) .............................................................................. 2, 7, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 5, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 5, 10

*Bly-Magee v. Lungren*,
   214 F. App'x. 642 (9th Cir. 2006) ............................................................................. 16

*Brazil v. Dole Food Co., Inc.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ....................................................................... 12

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
   169 Cal. App. 4th 116, 135 (2008) .............................................................................. 7

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (Cal. Ct. App. 1990) ............................................................. 11

*Carson Indus., Inc. v. Am. Tech. Network, Corp.*,
   No. 14-CV-01769-NC, 2015 WL 12661953 (N.D. Cal. Sept. 26, 2015) ................... 9

*Chavez v. U.S.*,
   683 F.3d 1102 (9th Cir. 2012) ..................................................................................... 5

*Chromadex Inc. v. Elysium Health, Inc.*,
   301 F. Supp. 3d 963 (C.D. Cal. 2017) ....................................................................... 15

*Crown Cell Inc. v. Ecovacs Robotics Inc.*,
   No. 21-CV-07890-SI, 2022 WL 4087512 (N.D. Cal. Sept. 6, 2022) ........... 7, 8, 13, 14

*Custom LED, LLC v. eBay, Inc.*,
   No. C 12-00350, 2012 WL 1909333 (N.D. Cal. May 24, 2012) ............................... 15

*Das v. WMC Mortg. Corp.*,
   831 F. Supp. 2d 1147 (N.D. Cal. 2011) ..................................................................... 17

*De Rocha Express, Inc. v. Combined Res., Inc.*,
   No. 24-CV-02037-JST, 2024 WL 4504536, at *2 (N.D. Cal. Oct. 15, 2024) ........... 11

*Ferranti v. Hewlett-Packard Co.*,
   No. 5:13-CV-03847-EJD, 2014 WL 4647962 (N.D. Cal. Sep. 16, 2014) ................... 8

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009)......................................................................................... 5

*Gerlinger v. Amazon.Com, Inc.*,
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ......................................................................... 20

*Guz v. Bechtel Nat'l Inc.*,
    24 Cal. 4th 317 (Cal. 2000)......................................................................................... 11

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022)...................................................................................... 19

*Jones v. ConAgra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ......................................................................... 12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).................................................................................. 18, 19

*Klein v. Chevron U.S.A. Inc.*,
    202 Cal. App. 4th 1342 (Cal. Ct. App. 2012) ............................................................. 20

*Magic Link Garment Ltd. v Thirdlove, Inc.*,
    445 F. Supp. 3d 346 (N.D. Cal. 2020) (Hamilton, C.J.) ............................................ 3, 7, 8, 9

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ..................................................................................................... 19

*Nguyen v. Stephens Inst.*,
    529 F. Supp. 3d 1047 (N.D. Cal. 2021) ....................................................................... 20

*Oda Nursery v. Garcia Tree & Lawn*,
    103 N.M. 438 (N.M. 1985) ............................................................................................ 9

*R Power Biofuels LLC v. Chemex*,
    No. 16-cv-00716., 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ............................... 17

*Rattagan v. Uber Tech. Inc.*,
    17 Cal. 5th 1 (Cal. 2024)........................................................................................*passim*

*Robinson Helicopter Co., v. Dana Corp.*,
    34 Cal. 4th 979 (Cal. 2004)...................................................................................... 13, 14

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal. 4th 394 (Cal. 1996) ......................................................................................... 18

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (Cal. Ct. App. 2014) ............................................................... 20

*Ryan v. Microsoft Corp*,
    , 147 F. Supp. 3d 868, 887 (N.D. Cal. 2015) .............................................................. 17

ARENTFOX SCHIFF LLP

- vi - DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM ISO MOTION

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ......................................................................... 17

*Saroya v. Univ. of the Pac.*,
   503 F. Supp. 3d 986 (N.D. Cal. 2020) ........................................................... 20

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................... 19, 20

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) ................................................ 7

*Tabletop Media, LLC v. Citizen Systems of Am. Corp.*,
   No. CV 16-7140, 2017 WL 10591885 (C.D. Cal. March 3, 2017) .................. 8

*Taie Weie Enter. Co. Ltd. v. Tech. Aouatic Associated Mfg.*,
   No. CV-20-3427, 2020 WL 13311702 (C.D. Cal. March 3, 2017) .................. 7

*Tempest v. Safeway, Inc.*,
   No. 24-CV-06553-JSC, 2025 WL 3171581 (N.D. Cal. Nov. 13, 2025) ......... 9, 10, 11

*Twaite v. Allstate Ins. Co.*,
   216 Cal. App. 3d 239, 252 (1989) ................................................................ 10

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 16

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) .......................................................................... 5

*Williams v. Apple, Inc.*,
   No. 19-cv-04700, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ................. 19

*Yingling v. eBay, Inc.*,
   No. C 09-01733, 2009 WL 10692097 (N.D. Cal. Nov. 4, 2009) ................... 15

*Zepeda v. PayPal, Inc.*,
   777 F. Supp. 2d 1215 (N.D. Cal. 2011) ........................................................ 20

**Statutes**

28 U.S.C. § 1332 ..................................................................................................... 9

Cal. Civ. Code § 1791 ........................................................................................... 12

Cal. Civ. Code § 1791.1 ........................................................................................ 12

Cal. Com. Code § 1101 ........................................................................................... 6

Cal. Com. Code § 2608 ........................................................................................... 6

Fed. R. Civ. P. 9 ................................................................................................... *passim*

Fed. R. Civ. P. 11 ......................................................................................................... 10

Fed. R. Civ. P. 12 ....................................................................................................... 4, 5

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................ 4

U.C.C. § 2-608(2) .......................................................................................................... 8

U.C.C. § 2-711(1) .......................................................................................................... 8

UCC § 2-207 .................................................................................................................. 6

UCC § 2-605 .......................................................................................................... 1, 2, 8

UCC § 2-606 .................................................................................................................. 3

UCC § 2-607 .................................................................................................... 1, 2, 5, 6

UCC § 2-608 ...................................................................................................... 2, 5, 6

**Other Authorities**

California Commercial Code ...................................................................................... 1, 7

California's Unfair Competition Law ("UCL") ......................................................... 4, 19

Song-Beverly Consumer Warranty Act .................................................................. 4, 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

4

5

This case concerns a dispute over Plaintiff BeSweet Creations, Inc. d/b/a SugarbearPRO's ("BeSweet" or "Plaintiff") purchase of vitamin supplements manufactured by Catalent, for BeSweet's selling forward to consumers.[1]

6

7

8

9

10

11

12

13

14

15

The dispute began in 2024, when BeSweet fell far behind in its accounts with Catalent. To recover the unpaid amounts, in March 2025, Catalent initiated arbitration against BeSweet before the International Institute for Conflict Prevention & Resolution ("ICPR"). Several months later, in August 2025, BeSweet filed the present action, alleging for the first time that products Catalent manufactured several years prior, between 2021 and 2023, were defective. The parties engaged in motion practice over the arbitrability of the dispute. BeSweet argued vociferously to both the ICPR and this Court that Catalent's sales of supplements before March 3, 2023 constituted sales of "goods" under Chapter 2 of the Uniform Commercial Code ("UCC"), as implemented in the California Commercial Code, and were not subject to the parties' arbitration agreement. The ICPR agreed, leaving BeSweet's claims pre-dating March 2023 pending in this Court.

16

17

18

19

20

21

But having convinced the ICPR that the UCC governs the sale of goods manufactured by Catalent to avoid arbitration, BeSweet fails to allege in its Complaint here any of the facts necessary to state a claim for breach of contract or warranty under the UCC. The UCC, of course, establishes a comprehensive set of rules that govern the rights and obligations of buyers and sellers of UCC "goods." These rules exist to facilitate, and thereby encourage, commercial transactions through application of routine, predictable parameters.

22

23

24

25

Relevant here, Chapter 2 of the UCC, specifically section 2-607, gives a buyer like BeSweet the right to reject a delivery of goods it deems defective, so long as it complies with the relevant procedures like providing timely notice to the seller. The Chapter 2 procedures, specifically section 2-605, grant the seller (here, Catalent) specific rights to inspect the rejected goods and challenge

26

---

27

28

[1] "Catalent" here means all defendants collectively: Catalent Wellness California, LLC, Catalent Wellness, LLC, Catalent Pharma Solutions, LLC, Catalent Pharma Solutions, Inc., and Catalent Inc. Several of these defendants had no connection to the transactions alleged, but that is not material to this Motion.

ARENTFOX SCHIFF LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM ISO MOTION

the buyer's assertion of non-conformity. The rules even cover a situation where a buyer learns of a defect after it has accepted a delivery of goods, and allows revocation of that earlier acceptance under section 2-608, again, provided certain criteria are satisfied. And there are numerous other provisions in Chapter 2 that govern which claims may be asserted and which remedies are available to buyers and sellers. Stricter timing rules apply, for example, for perishable goods, like the edible supplements at issue here.

The fundamental problem with BeSweet's Complaint is that it does not allege <u>any</u> facts showing it complied with these long-established UCC rules and procedures. It is well-settled in the Ninth Circuit and under California law that to state a claim, BeSweet is required to allege either that it promptly rejected the goods Catalent manufactured under UCC 2-607, or that it justifiably revoked its earlier acceptance under UCC 2-608. "To avoid dismissal of a breach of contract or breach of warranty claim in California, [a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Alvarez v. Chevron Corp.,* 656 F.3d 925, 932 (9th Cir. 2011) (quotation omitted). Citing UCC section 2-607, the Ninth Circuit in *Alvarez* affirmed the district court's dismissal of the plaintiff's suit on these grounds: "The district court properly dismissed these common law claims because Plaintiffs failed to provide Defendants with reasonable notice." *Id.* at 931-32. The notice required under the UCC must have been provided "pre-suit." *Id.* at 932. Here, BeSweet's complaint must be dismissed because it does not allege that it gave <u>any</u> notice to Catalent, even after suit was filed.

Given BeSweet's vociferous advocacy for application of the UCC to avoid arbitration, BeSweet's failure to plead compliance with the UCC was no accidental oversight—as its other allegations show. That is, BeSweet pleads facts showing that it <u>accepted</u> Catalent's goods and sold them on to its customers. It does not allege that it ever gave Catalent the opportunity to inspect the supposedly defective goods under UCC 2-605. And tellingly, BeSweet does not allege that the supposedly defective goods came back to it: BeSweet does not allege that it recalled any goods or that it was forced to accept significant returns from any customer. Once the Complaint's legal conclusions are ignored, as they must be, the only inference from the facts alleged is that BeSweet accepted all of the Catalent goods and sold them to customers. As this Court has held, if a buyer

1    has sold the goods onward to customers, the buyer has "irrevocably accepted" them under UCC 2-

2    606, and judgment in the seller's favor is required as a matter of law. *See Magic Link Garment Ltd.*

3    *v Thirdlove, Inc.*, 445 F. Supp. 3d 346, 359 (N.D. Cal. 2020) (Hamilton, C.J.).

4         Because BeSweet is unable to state a claim under the relevant law—the UCC—BeSweet

5    turns to a tired gambit: it alleges fraud. But the economic loss rule precludes BeSweet's attempt to

6    end-run the UCC. The California Supreme Court recently reaffirmed the applicability of the

7    economic loss rule in *Rattagan v. Uber Tech. Inc.*, 17 Cal. 5th 1 (Cal. 2024), and the important role

8    it plays in preventing the law of contract from dissolving into the law of tort. BeSweet's fraud and

9    other tort claims are precluded because they overlap entirely with its contract claims and damages.

10   All of the damages BeSweet seeks are economic in nature; it alleges no personal injury or property

11   damage. Moreover, in <u>Rattagan</u>, the Supreme Court stated that it is even more imperative that fraud

12   claims be pleaded with particularity, as a "safeguard" against just the tactic BeSweet employs here.

13   But BeSweet's fraud allegations are hopelessly vague, which also violates Rule 9(b). *Id.* at 34.

14        BeSweet alleges two equitable claims, yet it seeks money damages and does not allege it

15   lacks an adequate remedy at law. These claims fail, too.

16        The Court should grant this Motion and dismiss all of BeSweet's claims with prejudice.

17   **II.    RELEVANT BACKGROUND**

18        **A.    Procedural Posture.**

19        As the Court may recall from prior proceedings in this matter, the legal dispute between

20   Catalent and BeSweet originated in late 2024, with BeSweet falling $3.6 million in arrears in its

21   accounts with Catalent for product manufactured in the spring of 2024. (Dkt. 49 ¶ 11; Dkt. 24-1,

22   Ex. 1, ¶ 1). This forced Catalent to initiate an arbitration demand before the ICPR on March 15,

23   2025.  (Dkt. 49 ¶ 40, 22; Dkt. 24 ¶ 6). On August 1, 2025, several months later, BeSweet filed this

24   case, alleging for the first time that products Catalent delivered starting in 2021 were defective.

25   (Dkt. 1).

26        BeSweet disputed the arbitrability of the claims before both this Court and the ICPR.

27   BeSweet argued that a contract between the parties, the "Quality Agreement," was void, and that

28   all of the parties' transactions were sales of goods subject to the UCC. (Dkt. 1, ¶ 40; Dkt. 39-1, 4-

5). On December 3, 2025, the ICPR rejected BeSweet's arguments as to transactions that occurred after the effective date of the Quality Agreement, March 3, 2023, finding them subject to arbitration and third-party quality review. (Dkt. 39-1, 8). But the ICPR accepted BeSweet's arguments as to transactions occurring before March 3, 2023, finding that the products at issue are "goods" with the meaning of, and subject to, the UCC. (Dkt. 39-1, 6). On that basis, the ICPR found that pre-March 3, 2023 transactions were not subject to arbitration. (Dkt. 39-1, 8).[2] Thus, the relevant period for purposes of this case is up to and including March 2, 2023 (hereinafter, the "Relevant Period.").

BeSweet alleges eight causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud, (4) fraudulent inducement, (5) negligent misrepresentation, (6) violation of California's Unfair Competition Law, (7) violation of the Song-Beverly Consumer Warranty Act, and (8) unjust enrichment. (Dkt. 1). Catalent answered on January 20, 2026 (Dkt. 49), and pleadings closed on February 10, 2026. Fed. R. Civ. P. 15(a)(1)(B).

**B.    Complaint Allegations[3]**

BeSweet is a beauty and wellness brand specializing in vitamin-based supplements, doing business under the name SugarbearPRO. (Dkt. 1, ¶ 1). Its products include hair vitamins, sleep vitamins, and other edible gummy supplements. (Id. ¶ 1, n.1).  During the Relevant Period, Catalent manufactured several different gummy supplements for BeSweet at Catalent's San Francisco facility. (Id. ¶ 24). BeSweet then resold the gummy products onward to distributors and retailers. BeSweet alleges that it issued purchase orders to Catalent, and Catalent would produce the product, ship the product, and issue an invoice to BeSweet. (Id.). BeSweet issued purchase orders to Catalent and accepted the goods Catalent delivered pursuant to those orders. (Id. ¶¶ 26, 27, 35, 38).

BeSweet alleges that at some point, Catalent changed the recipes for BeSweet's products without notifying BeSweet, and that in late 2021, BeSweet began receiving complaints from its customers that their products appeared "old and off color." (Id. ¶¶ 28, 30). Catalent allegedly delivered products that had other quality defects. (Id. ¶ 35).

---

[2] Catalent also moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss for lack of subject matter jurisdiction. (Dkt. 23). Given the ICPR's ruling, this Court denied that motion as to transactions dated on or before March 3, 2023. (Dkt. 45).

[3] Catalent disputes BeSweet's allegations, but on a Rule 12(c) motion, understands that factual allegations in the complaint are taken as true.

Of particular relevance to this Motion, BeSweet's Complaint is devoid of allegations critical to claims involving allegedly defective goods under the UCC. Specifically, BeSweet does not allege that during the Relevant Period, it rejected any shipment of goods from Catalent under UCC 2-607. Nor does BeSweet allege that pursuant to UCC 2-608, it accepted goods from Catalent but then revoked such acceptance at some later time. BeSweet also does not allege that Catalent rejected any such UCC notification. BeSweet does not allege that it issued any recall notice to consumers, or that it actually recalled any of the Catalent-manufactured products from a distributor, wholesaler, retailer or consumer.

## III. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings "is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6)." *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). Under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. *Id.* Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and a court must discount such "conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez*, 682 F.3d at 1108 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court is also not required to accept "legal conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV. <u>THE CONTRACT AND WARRANTY CLAIMS FAIL.</u>

BeSweet asserts a breach of contract claim (first claim for relief); a breach of the implied covenant of good faith and fair dealing (second claim for relief) and a breach of the Song-Beverly Consumer Warranty Act's warranty of merchantability (seventh claim for relief).

These claims fail as a matter of law because: (1) BeSweet fails to allege a legal prerequisite for the contract claims: that it seasonably provided Catalent with notice that it rejected the goods

(UCC 2-607), justifiably revoked its earlier acceptance of the goods (UCC 2-608) or that Catalent refused to honor a justifiable rejection or revocation; (2) BeSweet fails to identify any contractual terms that were breached; (3) the implied covenant claim is redundant and superfluous of the breach of contract claim; and (4) Song-Beverly does not apply to "consumables," like the edible supplements at issue here.

### A.    BeSweet Fails to State a Claim for Breach of a UCC Sale of Goods Contract.

California has adopted the UCC in the California Commercial Code. *See* Cal. Com. Code § 1101 *et seq.*[4]  As noted above, in the ICPR Arbitration and before this Court, BeSweet argued that its purchase of the supplements constituted a UCC "sale of goods." (Dkt. 29 at 8-12 (arguing at length that "UCC Section 2-207 And California Law Apply Here")). The ICPR accepted that argument as to transactions occurring before March 3, 2023, and in part on that ground, held those transactions were not subject to arbitration or third-party review.[5] (Dkt. 39-1, 7).

UCC Chapter 2 covers contracts for the sale of goods, and subsection 6 specifies how buyers may accept or reject goods, and the remedies for buyer's and seller's breach. The UCC imposes specific requirements on buyers and sellers, in considerable detail. But having argued that "the Uniform Commercial Code ('UCC') governs the purchase orders at issue in this lawsuit," (Dkt. 29 at 5:20-21), BeSweet then utterly fails to allege the required elements of a claim for breach of a sale of UCC goods.

BeSweet never alleges the key, prerequisite allegations for a claim alleging breach: it does not allege that it provided notice to Catalent under UCC 2-607 that it rejected any of Catalent's deliveries. Nor does BeSweet allege that it accepted any delivery but later revoked its acceptance under UCC 2-608 (for example, because it later discovered a defect not apparent at the time of delivery). And because it does not allege a rejection or revocation, BeSweet also does not allege that Catalent refused BeSweet's rejection or revocation, another prerequisite. To the contrary, BeSweet alleges that it accepted the supplements from Catalent and sold them on to consumers. It

---

[4] The UCC and California Commercial Code chapter/section references are essentially the same; *i.e.*, UCC Section 2-608 corresponds with Cal. Com. Code 2608. For simplicity, we will refer to the UCC sections herein.
[5] If BeSweet were to attempt to argue now that the sales are not governed by the UCC or California Commercial Code, it should be judicially estopped from doing so.

does not allege that it recalled any of the supplements, issued any notices of recall, or was forced to accept significant returns from anyone. These are glaring omissions. BeSweet's failure to allege these cornerstone facts is fatal to all of its claims here.

"To avoid dismissal of a breach of contract or breach of warranty claim in California, a buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). Any such notice must be provided before suit is filed. "The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court. This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice." *Id.* (affirming grant of motion to dismiss for plaintiff's failure to satisfy California's pre-suit notice requirement) (citing *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) and *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008)). These pleading requirements are well-established, and courts have routinely applied *Alvarez* and granted motions to dismiss where plaintiffs fail to allege compliance with them.[6]

Indeed, BeSweet's allegations are entirely consistent with the possibility that BeSweet sold all or substantially all of the Catalent-manufactured supplements on to retailers, distributors or consumers. A buyer of UCC goods like BeSweet cannot state a claim for goods it sold onward. *See Magic Link Garment Ltd.*, 445 F. Supp. 3d at 359. Nor can a UCC buyer sit on its rights, wait for years, and then only cry foul when it serves its interests to do so (for example, after being sued for $3.6 million in unpaid invoices). That is true for all UCC goods, but it is doubly true when those goods are perishable, like the edible gummies here.

In circumstances where "the buyer has accepted the goods," as BeSweet alleges it did here, then "if it is to state a claim for breach of contract under the California Commercial Code," the

---

[6] *See Crown Cell Inc. v. Ecovacs Robotics Inc.*, No. 21-CV-07890-SI, 2022 WL 4087512, at *6 (N.D. Cal. Sept. 6, 2022) (granting motion to dismiss where plaintiff failed to allege any notice was given); *Taie Weie Enter. Co. Ltd. v. Tech. Aouatic Associated Mfg.*, No. CV-20-3427, 2020 WL 13311702, at *5 (C.D. Cal. March 3, 2017) (granting a motion to dismiss a counterclaim, holding that the defendant's "failure to adequately allege rejection or revocation of its acceptance of the supposedly defective goods preclude[d] a claim for breach of contract[.]"); *Stearns*, 763 F. Supp. 2d at 1142-44 (N.D. Cal. 2010) (granting motion to dismiss; collecting cases).

1    buyer "must allege that it justifiably revok[ed] acceptance of the goods[.]" *Tabletop Media, LLC v.*

2    *Citizen Systems of Am. Corp.*, No. CV 16-7140, 2017 WL 10591885, at *7-8 (C.D. Cal. March 3,

3    2017)). This Court, in *Magic Link Garment Ltd. v Thirdlove, Inc.*, held that, absent a rejection, the

4    defendant could only "pursue a breach of contract [claim] … if it [had] revoked its acceptance" of

5    the previously accepted products. 445 F. Supp. 3d at 359.

6          Of course, BeSweet must not merely allege that it rejected the goods, it must also allege

7    that Catalent refused to remedy the defect. To state the obvious, if the seller takes back the goods

8    or provides a refund, there is no breach.  A claim for breach "is not premised on defects alone, but

9    rather, on how the seller responds to the buyer's request to remedy those defects[.]" *Crown Cell*

10   *Inc.*, 2022 WL 4087512, at *5 (N.D. Cal. Sept. 6, 2022) (granting motion to dismiss where buyer

11   did not allege that seller failed to remedy defects); *see also Ferranti v. Hewlett-Packard Co.*, No.

12   5:13-CV-03847-EJD, 2014 WL 4647962, at *6 (N.D. Cal. Sep. 16, 2014) (granting motion to

13   dismiss breach of express warranty claim where "[t]he fact that Plaintiffs did receive replacement

14   printers and were able to get assistance from Tech Support indicate[d] that HP did comply with its

15   warranty"). BeSweet does not allege any refusal by Catalent to remedy the supposed defects.

16         Moreover, the law requires a plaintiff to plead facts showing that any later revocation was

17   <u>justifiable</u>. U.C.C. § 2-711(1) (providing breach of contract remedies where "the buyer rightfully

18   rejects or justifiably revokes acceptance"). BeSweet fails to allege this as well. A "justifiable"

19   revocation includes a requirement that any revocation be reasonably timely. U.C.C. § 2-608(2);

20   *Tabletop*, 2017 WL 1059188 5 at *7. Again, this requirement is necessary for obvious commercial

21   reasons—so the seller can address any claimed defect then, not years later. Under UCC 2-605, a

22   notice of rejection or revocation triggers rights of the seller, including the right to inspect the goods

23   for defects. U.C.C. § 2-605. And if the buyer fails to state the nature of the defect at the time of

24   rejection, it will be unable later to claim breach: "The buyer's failure to state in connection with

25   rejection a particular defect which is ascertainable by reasonable inspection <u>precludes him from</u>

26   <u>relying on the unstated defect to justify rejection or to establish breach</u>[.]" U.C.C. § 2-605(1)

27   (emphasis added). BeSweet fails to allege any rejection or revocation, and so does not allege

28   justification.

1    Courts have routinely held that rejection or revocation that comes too late is invalid as a

2    matter of law. "[B]ecause Plaintiffs fail to allege Defendant received notice before Plaintiffs filed

3    suit, Plaintiffs … cannot state a California breach of contract claim." *Tempest v. Safeway, Inc.*, No.

4    24-CV-06553-JSC, 2025 WL 3171581, at *7 (N.D. Cal. Nov. 13, 2025) (granting motion to dismiss

5    breach of contract claim because plaintiffs failed to provide pre-suit notice). That is especially true

6    with products that are perishable or have a limited useful life. *See, e.g., Oda Nursery v. Garcia Tree

7    & Lawn*, 103 N.M. 438, 441-42 (N.M. 1985) (buyer's four-month delay of revocation for juniper

8    plants was untimely as a matter of law). Here, particularly because BeSweet alleges that these edible

9    supplements have a limited shelf life (*see* Dkt. 1, ¶ 30), BeSweet was required to allege a timely

10   rejection or revocation, pre-suit. It does not make any such allegation.[7]

11    In addition, BeSweet alleges downstream sales to customers but fails to allege any recalls

12   or returns of product. As this Court held in *Magic Link Garment*, goods that a buyer accepts and

13   then sells to customers have been "irrevocably accepted" by the buyer, and cannot serve as a basis

14   for recovery. 445 F. Supp. 3d at 359-60 (granting summary judgment to seller regarding goods sold

15   to customers); *see also Carson Indus., Inc. v. Am. Tech. Network, Corp.*, No. 14-CV-01769-NC,

16   2015 WL 12661953, at *4-6 (N.D. Cal. Sept. 26, 2015) (finding that the buyer accepted the goods

17   when it kept the goods and resold them to customers). Allowing the buyer to realize the benefit of

18   selling the goods on to downstream customers and then turn around and sue the seller for damages

19   would give the buyer a windfall and would be inequitable and commercially unreasonable. Here,

20   BeSweet fails to allege that any Catalent-manufactured goods were not sold onward to customers,

21   fails to allege any recalls or product returns it was forced to accept. The only reasonable inference

22

23   _____

[7] The closest that BeSweet comes to the required allegations is its single, vague assertion that during
some unspecified "period," "Catalent did not credit or reimburse BeSweet for the cost of defective
products." (Dkt. 1, ¶ 33). But this is artful pleading. BeSweet does not allege that it ever rejected
goods or requested a credit in the first place. Moreover, because it does not allege when this event
occurred, BeSweet does not allege that the transaction occurred during the Relevant Period (and
thus, whether this Court has subject matter jurisdiction or whether it is a transaction that the ICPR
has ruled is subject to arbitration or third-party review). Nor does BeSweet allege that the amount
at issue regarding that single allegation exceeds $75,000, a relevant omission given that BeSweet
invokes diversity jurisdiction. *See* 28 U.S.C. § 1332.

1   from the Complaint's allegations is that all of the supplements were sold, that BeSweet has

2   "irrevocably accepted" them, precluding it from stating a claim.

3       BeSweet's claims also fail the plausibility requirements of *Iqbal* and *Twombly*. The story

4   that BeSweet tells is that between 2021 and 2023, shipment after shipment of Catalent products

5   were supposedly rife with defects, causing harm to BeSweet. Yet BeSweet never rejected a single

6   delivery, never revoked a single prior acceptance, never stopped ordering goods from Catalent,

7   never recalled any of the supposedly defective products, was never forced to take back product,

8   never threatened to sue Catalent, never brought any claim in any forum—until, that is, a few months

9   after Catalent initiated the ICPR arbitration in March 2025 to recover on its unpaid invoices for

10  product manufactured and delivered in the spring of 2024.

11      BeSweet is a large, successful, sophisticated business with competent and experienced legal

12  counsel; if it had a Rule 11 basis to allege such facts, it would have done so. It did not.

13  **B.      BeSweet Fails to Identify Any Contractual Term That Catalent Breached.**

14      Second, BeSweet fails to identify any contractual terms that Catalent breached. "To state a

15  cause of action for breach of contract, it is absolutely essential to plead the terms of the contract."

16  *Tempest*, 2025 WL 3171581, at *7 (granting motion to dismiss) (citing *Twaite v. Allstate Ins. Co.*,

17  216 Cal. App. 3d 239, 252 (1989)). It is axiomatic that a defendant cannot be said to "breach" a

18  term to which it never agreed in the first place.

19      BeSweet identifies only a handful of contractual terms. In Paragraph 26 of the Complaint,

20  BeSweet alleges that the transaction documents at issue consisted solely of BeSweet's purchase

21  orders, which identified only "the key terms of the transaction, including the specific product and

22  quantity to be purchased, the price, and the details for where the product would be shipped." (Dkt.

23  1, ¶ 26). But while BeSweet alleges these contractual terms in detail, it identifies no other terms.

24  Nor does BeSweet allege that Catalent breached any of the terms it does identify (*e.g.,* price,

25  quantity, shipping location).

26      So while BeSweet alleges that Catalent failed to perform certain acts—*i.e.*, failed to meet

27  "specification" and failed to "conduct proper testing and trials"—BeSweet conspicuously does not

28  allege any obligation to perform those acts in the first place. For example, BeSweet does not allege

that the parties' contracts set forth any product specifications or obligated Catalent to conduct any testing at all, let alone a particular type of testing. It does not allege these terms are part of the purchase orders, which are the only contract documents it identifies. Given that BeSweet has "not sufficiently alleged the terms of the contract at issue, [it] fail[s] to plausibly allege Defendant[s] breached said contract." *Tempest*, 2025 WL 3171581, at *7 (citing *De Rocha Express, Inc. v. Combined Res., Inc.*, No. 24-CV-02037-JST, 2024 WL 4504536, at *2 (N.D. Cal. Oct. 15, 2024) ("Because De Rocha has failed to allege facts regarding the terms of the contract, he also cannot plausibly allege breach.")). This requires dismissal.

Taking BeSweet's allegations at face value, it does not allege the breach of any contractual obligation or contract term. This does not state a claim.

## C. BeSweet's Implied Covenant Claim is Superfluous.

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (Cal. Ct. App. 1990). A claim for breach of the implied covenant cannot be duplicative of a breach of contract claim. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 325, 327 (Cal. 2000) ("[W]here breach of an actual [contract] term is alleged, a separate implied covenant claim, based on the same breach, is superfluous."). If the allegations supporting a breach of implied covenant of good faith and fair dealing claim "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is stated." *Careau*, 222 Cal. App. 3d at 1395, 1401 (affirming dismissal of redundant claim).

BeSweet's breach of implied covenant of good faith and fair dealing claim fails because it relies on the same alleged acts as its breach of contract claim and seeks the same damages. (*See* Dkt.1, ¶¶ 52, 53). Specifically, BeSweet alleges that Catalent breached the implied covenant by delivering defective products and failing to notify BeSweet about changes in products. (Dkt. 1, ¶ 52). The damages that BeSweet seeks for both claims are also the same. *Compare* Dkt. 1, ¶ 49 (breach of contract damages) *with* ¶ 54 (breach of implied covenant damages). And given the

1    specific requirements of the UCC, long established under Ninth Circuit and California law,

2    BeSweet cannot avoid dismissal by alleging a nebulous breach of implied duty claim. *Alvarez*, 656

3    F. 3d 925 at 931 n.6 (affirming dismissal of redundant claim).

4              **D.      The Song-Beverly Act Does Not Apply to Consumables.**

5              BeSweet's seventh claim for relief arises under California Civil Code Section 1791.1, the

6    Song-Beverly Consumer Warranty Act (the "Act"), for an alleged breach of implied warranty of

7    merchantability. This claim must be dismissed because the Act does not apply to consumables like

8    the edible vitamin supplements in this case.

9              Section 1791.1 imposes an implied warranty of merchantability only as to "consumer

10   goods" (Cal. Civ. Code § 1791.1), and "consumer goods" are defined as "any new product or part

11   thereof that is used, bought, or leased for use primarily for personal family, or household purposes,

12   *except for* clothing and *consumables*" (*id.* § 1791(a) (emphasis added)). The Act defines

13   "consumables," as "any product that is intended for consumption by individuals, or use by

14   individuals for purposes of personal care or in the performance of services ordinarily rendered

15   within the household, and that usually is consumed or expended in the course of consumption or

16   use." *Id.* § 1791(d).

17             The edible vitamin supplements at issue clearly meet this definition and are thus "excluded

18   from the Act." *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 965 (N.D. Cal. 2013) (holding

19   that mixed berries and mixed fruit are consumables). BeSweet admits the supplements are

20   consumables: it specifically alleges that the Catalent-manufactured products were intended for

21   "consumption." (Dkt. 1, ¶ 80). BeSweet's allegations about the "recipes", "taste," and "smell, taste

22   and appearance" of the vitamin supplements confirm that the products are "consumables." (Dkt. 1,

23   ¶¶ 3, 5, 30, 35, 38, 48, 52). The seventh claim for relief must be dismissed with prejudice. *See*

24   *Brazil*, 935 F. Supp. 2d at 965 (dismissing with prejudice); *Jones v. ConAgra Foods, Inc.*, 912 F.

25   Supp. 2d 889, 904 (N.D. Cal. 2012) (same).

26   **V.     THE TORT CLAIMS FAIL.**

27             This case is about a sale of goods pursuant to contract and the UCC. But because BeSweet

28   does not satisfy the UCC pleading requirements, does not allege that Catalent breached any actual

ARENTFOX SCHIFF LLP

3:25-cv-06521-SK                                    - 12 -              DEFENDANTS' NOTICE OF MOTION AND
                                                                        MOTION FOR JUDGMENT ON THE
                                                                        PLEADINGS; MEMORANDUM ISO MOTION

term of any contract, and does not state a claim for breach of warranty, BeSweet tries to do an end run around the UCC by alleging tort claims. But as the California Supreme Court recently confirmed, the economic loss rule ("ELR") precludes plaintiffs from seeking tort remedies in these circumstances. Moreover, BeSweet fails to comply with Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pleaded with specificity.

### A.    The Economic Loss Rule Bars BeSweet's Tort Claims.

BeSweet asserts three tort claims—fraud (third claim for relief), fraudulent inducement (fourth claim for relief), and negligent misrepresentation (fifth claim for relief). All three claims are barred by the ELR.

As the California Supreme Court recently confirmed, "there is no recovery in tort for negligently inflicted purely economic losses, meaning financial harm unaccompanied by physical or property damage." *Rattagan v. Uber Tech. Inc.*, 17 Cal. 5th 1, 20 (Cal. 2024) (cleaned up). Simply put, the ELR bars recovery in tort for contractual disputes. *Robinson Helicopter Co., v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004) (ELR "requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations").

The ELR squarely applies here. As BeSweet alleges, contracts governed each and every one of the parties' transactions. (Dkt. 1, ¶ 26). All of BeSweet's claims arise out of contract, and allege classic contract-based "disappointed expectations" theories, essentially, that the supplements manufactured by Catalent were supposedly defective. BeSweet alleges no physical injury or property damage; the alleged losses are purely economic. In these circumstances, application of the ELR to bar BeSweet's tort claims is straightforward.

This Court's ruling in *Crown Cell Inc. v. Ecovacs Robotics Inc.* is illustrative. 2022 WL 4087512, at *4 (N.D. Cal. Sept. 6, 2022). There, as here, the plaintiff buyer of UCC goods alleged that the seller made fraudulent misrepresentations that led the plaintiff to keep buying: "Crown Cell reasonably relied on Ecovacs' misrepresentations when purchasing over 8,000 Ecovacs vacuum cleaners at a cost of $800,000.00." *Id.* The Court held that these allegations simply repeated the same theories as the alleged contractual breach, and thus were barred by the ELR. *Id.* at *4-5. The Court granted the defendant's motion to dismiss without leave to amend, because the complaint

failed "to allege facts such that Ecovacs's alleged breach of contract exposes Crown Cell to liability for personal damages independent of Crown Cell's economic loss." *Id.* at \*4.

The ELR has limited exceptions which do not apply here. The ELR does not bar fraud and intentional tort liability if plaintiff can meet <u>both</u> of two requirements: (1) the claims are independent from a breach of contract claim—that is, "the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract," and (2) the defendant has suffered harm "independent" of the damages caused by the alleged breach of contract—that is, "injury to persons or property that was not reasonably contemplated by the parties when the contract was formed." *Rattagan*, 17 Cal. 5th at 20-21; *see also Robinson*, 34 Cal. 4th at 988 (ELR "requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise"). Further, at the pleading stage, plaintiff must allege sufficient "factual specificity" demonstrating both prongs to clear the heightened pleading standard for fraud claims. *Rattagan*, 17 Cal. 5th at 34.  Fed. R. Civ. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). BeSweet has not met any of these requirements to avoid application of the ELR.

First, BeSweet did not allege that Catalent's conduct violated a duty that is independent from the obligations assumed by the parties when they entered the contracts. Nor does it identify any extra-contractual "duty" or "obligation" owed by Catalent. *See* (Dkt. 1, ¶¶ 55-59 (Fraud), 60-66 (Fraudulent Inducement), 67-70 (Negligent Misrepresentation)). The only obligations BeSweet alleges Catalent owed were contractual or for a breach of warranty. (Dkt. 1, ¶¶ 11, 33, 47, 53).

As shown in the table below, the alleged tortious conduct is duplicative of the alleged breach of contract conduct. BeSweet simply repeats the same allegations about the supplements' quality, recipe alterations made without approval, and unmet certification requirements.

| Claim | Allegations Supporting Claims |
|---|---|
| Breach of Contract (Claim 1) | "Catalent materially breached the parties' contracts by, among other things: changing product inputs **without approval or appropriate testing**, **altering Sugarbear gummies' identity, quality, smell, taste and appearance** without Sugarbear's approval, **delivering defective** |

| | | products, and violating regulatory requirements in the production of Sugarbear's products." (Dkt.1, ¶ 48). |
|---|---|---|
| | Fraud (Claim 3) | "Catalent's false statements, representations and assurances about the quality, testing, specifications and certifications of the products Catalent produced and delivered when Catalent [sic] paid on the purchase orders after Catalent's deliveries of the defective products" (Dkt.1, ¶ 57). |
| | Fraudulent Inducement (Claim 4) | "Catalent concealed quality control problems at the Hillsdale Facility, its unauthorized and untested recipe changes, and its failure to test the products it shipped to Sugarbear. Catalent also falsely stated that . . . [it] could produce products with the quality, consistency or certifications required by Sugarbear." (Dkt. 1, ¶ 61). |
| | Negligent Misrepresentation (Claim 5) | "These negligent misrepresentations included misrepresentations that Catalent's facilities were able to properly manufacture Sugarbear's products, that Catalent's shipped products had been fully tested and were consistent with Sugarbear's approved formulas, and that Catalent's facilities had the certifications necessary to manufacture Sugarbear's products." (Dkt. 1, ¶ 68). |

BeSweet's failure to meet prong one to the ELR exception requires its tort claims be dismissed. *See Custom LED, LLC v. eBay, Inc.*, No. C 12-00350, 2012 WL 1909333, at *4-5 (N.D. Cal. May 24, 2012) (dismissing without leave to amend plaintiff's common law fraud and deceit claims because plaintiff failed to "allege facts establishing a duty independent of the parties' contractual relationship or harm above and beyond the economic harm it suffered from the alleged breach of contract"); *Chromadex Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 969-70 (C.D. Cal. 2017) (dismissing fraudulent deceit claim as barred by the economic loss rule where the claim was based on the defendants' same alleged false promises and representations that supported the plaintiffs' breach of contract claim and where plaintiff's alleged injury arising from the fraudulent deceit was "simply economic harm resulting from the contract"); *Yingling v. eBay, Inc.*, No. C 09-01733, 2009 WL 10692097, at *5 (N.D. Cal. Nov. 4, 2009) (dismissing fraud and deceit claims where plaintiffs "failed to allege any harm above and beyond the economic harm that they suffered as a result of the alleged breach of contract").

Second, BeSweet does not satisfy the second prong of the limited exception for "independent duties"—it does not allege an injury "independent" of that caused by the alleged breach of contract. Nor does it allege non-economic injury, *i.e.*, harm to persons or property.

1    BeSweet's tort claims allege the same purely economic harm as its breach of contract claim. *See*

2    (Dkt. 1, ¶¶ 48 (Breach of Contract), 59 (Fraud), 65 (Fraudulent Inducement), 70 (Negligent

3    Representation)).  Accordingly, BeSweet's tort claims are barred.

4    **B.    BeSweet Fails to Allege Fraud with Specificity.**

5    As the California Supreme Court explained in <u>Rattagan</u>, there is an important procedural

6    safeguard at the pleadings stage to prevent the law of contract from dissolving into the law of tort—

7    and to prevent plaintiffs from routinely evading the ELR. This is the requirement that any fraud

8    claims be pleaded with specificity. "[T]he requirement that a fraud cause of action must be pled

9    with factual specificity provides an additional safeguard to ensure trial courts are well-positioned

10   at the pleading stage to assess whether the tort claim is truly independent of the contract, rather

11   than arising from it." *Rattagan*, 17 Cal. 5th at 34.

12   Here, BeSweet fails to satisfy this safeguard. BeSweet fails to allege any facts about the

13   fraudulent statements supposedly made by Catalent regarding its ability to manufacture the

14   supplements, its certifications, its testing protocols, or anything else. BeSweet does not allege who

15   made the supposed statements, when they were made, to whom they were made, or anything else.

16   The lack of specificity regarding the timing of the statements particularly matters here, because

17   claims regarding transactions after March 3, 2023 are subject to arbitration before the ICPR. Thus,

18   even if BeSweet had otherwise satisfied Rule 9(b) (and it did not), its failure to allege the date of

19   the supposed misrepresentations means that some or all of its tort claims may be covered by the

20   parties' arbitration agreement, depriving the Court of subject matter jurisdiction over them. These

21   issues must be sorted out at the pleadings stage.

22   As is well-settled, claims sounding in fraud "must be accompanied by 'the who, what, when,

23   where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

24   (9th Cir. 2003) (citation omitted); Fed. R. Civ. P. 9(b). To satisfy Rule 9's standard, the allegations

25   must be "specific enough to give defendants notice of the particular misconduct which is alleged

26   to constitute the fraud charged so that they can defend against the charge and not just deny that they

27   have done anything wrong." *Bly-Magee v. Lungren*, 214 F. App'x. 642, 644 (9th Cir. 2006). "[A]

28   plaintiff alleging fraud must state the time, place, and specific content of the false representations

1  as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625
2  F.3d 550, 558 (9th Cir. 2010) (citation omitted).

3       Moreover, BeSweet fails to allege <u>facts</u> (as opposed to mere conclusions) showing that the
4  statements were false; the only facts BeSweet alleges concern mere contractual non-performance.
5  For example, BeSweet alleges that Catalent represented that it had the ability to "properly
6  manufacture" the supplements to ensure they met "specifications" and "certifications."  BeSweet
7  alleges only the legal <u>conclusion</u> that these statements were false; it alleges no <u>facts</u>. For example,
8  it does not allege that Catalent lacked the physical equipment or technical know-how necessary to
9  meet the certification. All that BeSweet alleges is that the gummies were defective and off-color,
10  which can occur for any number of reasons. BeSweet's inability to plead facts, as opposed to
11  conclusions, particularly matters where, as here, the parties' relationship is governed by contract
12  and the economic loss rule applies. The California Supreme Court recognized the problem of
13  plaintiffs trying to re-cast contract claims as tort claims, and required pleading specificity for just
14  that purpose. *Rattagan*, 17 Cal. 5th at 34.

15       BeSweet's allegations also fail to specify (a) who supposedly made or received these false
16  representations (*see Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011)
17  ("Plaintiffs, for instance, did not plead with the requisite particularity the name of the AmNet
18  employee who concealed materials facts . . . . As such, Plaintiffs have failed to sufficiently allege
19  the circumstances constituting the alleged fraudulent concealment.")); *R Power Biofuels LLC v.*
20  *Chemex*, No. 16-cv-00716., 2016 WL 6663002 at *13 (N.D. Cal. Nov. 11, 2016) (it is not enough
21  that plaintiff identified "that the false statements were made to three specific people . . . and others"
22  because "Plaintiff still must . . . specify each party to the alleged misrepresentation")); (b) what
23  products, transactions, or purchase orders these false statements or omissions concerned; (c) the
24  dates Catalent made these misrepresentations (*see Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868,
25  887 (N.D. Cal. 2015) (fraud allegations did not satisfy Rule 9(b) partly because plaintiff did not
26  specify the time and date of the alleged misrepresentations and instead alleged that the fraudulent
27  conversations occurred "in 2011 and 2012" and "in approximately 2008")); or (d) even the method
28  of communication (e.g., email, a phone call, a letter, etc.). Without the requisite particularity,

Catalent does not have sufficient "notice of the particular misconduct which is alleged to constitute the fraud charged" and is hindered in its ability adequately defend itself. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).

Even if the parties' relationship was not governed by contract, and even if the ELR was inapplicable, this lack of specificity would require dismissal under Rule 9(b). But here, this pleading failure also means that BeSweet fails to satisfy the limited exception to the ELR. This is an additional reason to dismiss BeSweet's three tort claims—fraud (third claim for relief), fraudulent inducement (fourth claim for relief), and negligent misrepresentation (fifth claim for relief).

**C.     The Fraudulent Inducement Claim Fails for Additional Reasons.**

BeSweet also brings a claim for fraudulent inducement. This claim fails to comply with Rule 9(b), as explained above, but it also fails for a separate reason: BeSweet alleges facts that defeat the claim.

Fraud in the inducement occurs "when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (Cal. 1996). Here, BeSweet alleges that it entered into the manufacturing relationship with Catalent's predecessor, Bettera Brands. It does not allege that relationship was fraudulently induced; to the contrary, it alleges it was satisfied with its relationship with Bettera and received "consistently good and compliant product." *See* (Dkt. 1, ¶¶ 24-26). Catalent then acquired Bettera and succeeded to this relationship, which simply continued. Notably, BeSweet does not allege that Catalent took any action to "induce" BeSweet to enter into, or to continue, that existing relationship. *See generally* Dkt. 1.

To the extent that BeSweet alleges Catalent later induced it to enter into specific purchase orders, there are zero factual allegations supporting such a claim. For this additional reason, the fraudulent inducement claim must be dismissed.

1    **VI.    THE EQUITABLE CLAIMS FAIL.**

2          BeSweet also asserts two equitable claims: for violation of California's Unfair Competition

3    Law ("UCL") (sixth claim for relief) and unjust enrichment (eighth claim for relief). Both must be

4    dismissed because BeSweet failed to plead it lacks an adequate remedy at law. Additionally, the

5    unjust enrichment claim cannot lie where, as here, there is a written agreement between the parties.

6          BeSweet's claims are for money damages; it alleges that it has an adequate remedy at law.

7    (Dkt. 1, ¶¶ 49, 54, 82). Its claims in equity must therefore be dismissed. *See Morales v. Trans World*

8    *Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("It is a basic doctrine of equity jurisprudence that courts

9    of equity should not act . . . when the moving party has an adequate remedy at law.") (citation

10   omitted); *Williams v. Apple, Inc.*, No. 19-cv-04700, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17,

11   2020) ("[A] federal court cannot grant relief under the UCL . . . if Plaintiffs have an adequate

12   remedy at law."). To entertain a request for equitable relief, "a district court must have equitable

13   jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal

14   remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (reversing summary

15   judgment and directing the district court to enter a dismissal for lack of equitable jurisdiction); *see*

16   *also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (A plaintiff "must

17   establish that [it] lacks an adequate remedy at law before securing equitable restitution for past

18   harm under the UCL and [other equitable claim.]"). Both the UCL and unjust enrichment claim

19   must be dismissed, for this reason.[8]

20         The relief that BeSweet seeks through its equitable claims are the same money damages

21   that it seeks through its legal claims—"all money paid by Sugarbear to Catalent" and the "millions

22   of dollars" BeSweet paid "for defective products." *Compare* Dkt. 1, ¶¶ 76, 85, 86 (alleged damages

23   for equitable claims) *with* ¶¶ 49, 54, 82 (alleged damages for contract claims). There is complete

24   overlap. BeSweet fails to explain "how the same amount of money for the exact same harm is [an]

25

26   _____

[8] Moreover, because BeSweet's equitable claims are grounded in fraud, they must also satisfy Rule
27   9(b). *See Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1125 (9th Cir. 2009) (affirming the dismissal
     of a UCL claim based in fraud for failing to satisfy Rule 9(b)). As demonstrated above, BeSweet
28   fails to comply with Rule 9(b).

1    inadequate or incomplete" remedy at law. *Sonner*, 971 F.3d at 844 (finding that plaintiff had an

2    adequate remedy at law and dismissing plaintiff's equitable claims because she "concede[d] that

3    she seeks the same sum in equitable restitution as a full refund of the purchase price" and "fail[ed]

4    to explain how the same amount of money for the exact same harm is inadequate or incomplete").

5    Because it has an adequate remedy at law—as BeSweet itself alleges—BeSweet's equitable claims

6    must be dismissed.

7         Of course, this does not mean that BeSweet lacked a remedy for a well-pleaded claim. The

8    UCC provides buyers with well-established remedies: to reject the goods, and recover if the seller

9    does not honor the rejection. But BeSweet did not avail itself of the available UCC remedies. It

10   cannot attempt to fix its invalid money damages claims by recasting them as causes of action in

11   equity.

12        Last, BeSweet's claim for unjust enrichment "cannot lie where there exists between the

13   parties a valid express contract covering the same subject matter." *Rutherford Holdings, LLC v.*

14   *Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (Cal. Ct. App. 2014) (citation omitted); *Zepeda v.*

15   *PayPal, Inc.*, 777 F. Supp. 2d 1215, 1223 (N.D. Cal. 2011); *Gerlinger v. Amazon.Com, Inc.*, 311

16   F. Supp. 2d 838, 856 (N.D. Cal. 2004). Further, "a plaintiff may not plead the existence of an

17   enforceable contract"—as BeSweet does here—"and simultaneously maintain a quasi-contract

18   claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or

19   invalid." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020); *Nguyen v.*

20   *Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021) (dismissing plaintiff's unjust

21   enrichment claim because he "fail[ed] to allege that the same contract was unenforceable or void");

22   *Klein v. Chevron U.S.A. Inc.*, 202 Cal. App. 4th 1342, 1389-90 (Cal. Ct. App. 2012). Here, BeSweet

23   does not allege that the contracts at issue are unenforceable or void. To the contrary, BeSweet seeks

24   to *enforce* them. As such, its unjust enrichment claim must be dismissed.

25   **VII.    CONCLUSION**

26        For the reasons discussed above, the motion should be granted, and Plaintiff's complaint

27   should be dismissed in its entirety and with prejudice.

28

ARENTFOX SCHIFF LLP

1

Respectfully submitted,

2

3     Dated: February 20, 2026

**ARENTFOX SCHIFF LLP**

4

By: _____

5

Matthew B. Mock
Judy J. Bao
Attorneys for Defendants

6

7

CATALENT WELLNESS CALIFORNIA,
LLC, a California limited liability
company; CATALENT WELLNESS,
LLC, a Delaware limited liability
company; CATALENT PHARMA
SOLUTIONS, LLC, a Delaware limited
liability company; CATALENT PHARMA
SOLUTIONS, INC., a Delaware
corporation; and CATALENT INC., a
Delaware corporation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENTFOX SCHIFF LLP

3:25-cv-06521-SK                    - 21 -