UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BESWEET CREATIONS, INC., | Case No. 25-cv-06521-SK |
| Plaintiff, | |
| v. | **AMENDED NOTICE OF QUESTIONS FOR HEARING** |
| CATALENT WELLNESS CALIFORNIA, LLC, et al., | |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON JUNE 22, 2026, AT 9:30 A.M.  The Court intends to address the questions below at the hearing.  The Court advises the parties that it will not accept written answers to these questions.

The parties shall be prepared to address the following questions at the hearing:

1.    Plaintiff BeSweet Creations, Inc. d/b/a SugarbearPRO ("BeSweet") clearly alleges that the purchase orders with Defendants Catalent Wellness California, LLC, Catalent Wellness, LLC, Catalent Pharma Solutions, LLC, Catalent Pharma Solutions, Inc., and Catalent Inc. (collectively, "Catalent") were the contracts at issue in this case.  (Dkt. No. 73 (First Amended Complaint ("FAC") at ¶ 59.) BeSweet also alleges that those purchase orders included terms regarding consistent ingredients and quality that had been agreed to through conduct involving BeSweet and Catalent's predecessors and then with Catalent.  (*Id*. at ¶ 27.)

a.    To the extent BeSweet relies on terms established through conduct with Catalent's predecessors, on what authority does BeSweet rely to

United States District Court
Northern District of California

demonstrate that such conduct (and implied agreement) may be attributed to Catalent?

    b.    Why or why not are the contracts premised on these unwritten terms (the terms regarding quality and ingredients) barred by the statute of frauds?  On what authority do the parties rely?

2.    BeSweet also relies on written specifications to incorporate requirements for the appearance, color, and flavor of its products into the purchase order agreements. (Dkt. No. 73 at ¶ 28.)

    a.    When were these specifications written?

    b.    Who from Catalent does BeSweet allege agreed to incorporate these written specifications into all purchase orders?  If BeSweet alleges that individuals from Catalent's predecessors agreed to these written specifications, on what authority does BeSweet rely to attribute those agreements to Catalent?

    c.    When does BeSweet allege that individuals from Catalent agreed to these written specifications and that these specifications would be incorporated into all purchase orders?

    d.    Why or why not is Catalent's Certificate of Analysis allegedly provided with the fulfillment of each purchase order an indication of Catalent's agreement to the written specifications?  What do the Certificates of Analysis state?

3.    While BeSweet alleges that each purchase order constitutes a separate contract, the only material terms allegedly breached, the quality and ingredients, were incorporated from previous conversations and conduct.  For purposes of the statute of limitations, does that render the contracts oral instead of written?

4.    BeSweet alleges that its executive emailed a Catalent manager on October 5, 2021, regarding the growing customer complaints about the color of the Hair gummies and that the new shipment just sent by Catalent were all the wrong color.  (Dkt. No. 73 at ¶ 35.)  A manager from BeSweet also wrote Catalent's manager in November

United States District Court
Northern District of California

2021 and/or early December 2021 regarding deformities with the Hair gummies and discoloration problems with the Sleep gummies in a nearly every bottles. (*Id.* at ¶¶ 36, 37.) Why or why not was BeSweet on notice by these dates as to the defects in Catalent's production of BeSweet's products? In other words, because the alleged defects were visually apparent, on what basis does BeSweet contend that its discovery of the defects was delayed?

5. Do the parties agree that the breach of contract claim falls under the Article 2 of Uniform Commercial Code as adopted by California regarding the sale of goods? If not, on what basis?

6. BeSweet argues that the parties may agree to modify the notice and revocation requirements under the Commercial Code through the parties' conduct or contracts. (Dkt. No. 85 at p. 13.)

    a. In support of this argument, BeSweet cites to *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *6 (N.D. Cal. Mar. 28, 2024). However, the court in *Phillips* does not hold that the statutory requirements regarding notice and revocation may be modified by agreement. On what authority do the parties rely to show that these statutory requirements may or may not be modified by agreement?

    b. To the extent that the statutory requirements regarding notice and revocation may be modified by agreement, where in the First Amended Complaint does BeSweet allege that the parties actually agreed to modify these requirements and describe what they were modified to become?

7. BeSweet argues that it need not provide notice of the defects if Catalent had actual notice. Catalent counters that this exception to the UCC noticer requirement is limited to consumer purchases of products with a latent defect. (Dkt. No. 86 at p. 4.)

    a. On what authority do the parties rely to show that this exception does or does not apply to the goods and defects alleged by BeSweet?

3

United States District Court
Northern District of California

b.    Even if notice were satisfied by BeSweet's allegations of Catalent's knowledge, does BeSweet still need to allege revocation?  Why or why not, and on what authority do the parties rely?

8.    BeSweet argues that the fact that some of the defective products were resold is not fatal to its breach of contract claim.  (Dkt. No. 85 at p. 16.)

a.    BeSweet tries to distinguish the cases cited by Catalent but does not affirmatively cite to any cases showing that BeSweet's resale of the alleged defective goods to BeSweet's customers is not inconsistent with BeSweet's rejection of those goods.  On what authority does BeSweet affirmative rely?

b.    Where in the FAC does BeSweet allege that it retained or returned some of the alleged defective product to Catalent and did not resell it to BeSweet's customers?

9.    The three-year statute of limitations for a fraud claim begins to run "when the plaintiff suspected *or should have suspected* that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has *information which would put a reasonable person on inquiry*."  *Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (2021) (emphasis in original).  Why or why not should BeSweet have suspected wrongdoing by Catalent when it observed the defects in its products and received the customer complaints in 2021 as alleged in the FAC?  (Dkt. No. 73, ¶¶ 33-37.)

10.   BeSweet also alleges misrepresentations were made that induced purchase orders starting in May 2022.  How long was the process between the purchase orders and BeSweet's receipt of the new product?  For the orders received after August 1, 2022, does Calalent concede that the statue of limitations would not have expired before BeSweet's Complaint was filed on August 1, 2025?

11.   As the California Supreme Court made clear in *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20-21 (2024), under the independent tort principle a fraud or misrepresentation claim is not barred if two conditions are satisfied: (1) the plaintiff

4

must show "injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract"; and (2) "the defendant's conduct must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed."

    a.    What duty does BeSweet allege that Catalent violated that is *independent* of the rights and duties under the alleged contracts?

    b.    What injury does BeSweet allege that was *not* reasonably contemplated by the parties when the contracts were formed?

12.    Where in its FAC does BeSweet allege that its legal remedies are inadequate?

**IT IS SO ORDERED**.

Dated: June 15, 2026

_____

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

5