UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BESWEET CREATIONS, INC., | Case No. 25-cv-06521-SK |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| CATALENT WELLNESS CALIFORNIA, LLC, et al., | Regarding Docket No. 82 |
| Defendants. | |

This matter comes before the Court upon consideration of the motion to dismiss filed by Defendants Catalent Wellness California, LLC, Catalent Wellness, LLC, Catalent Pharma Solutions, LLC, Catalent Pharma Solutions, Inc., and Catalent Inc. (collectively, "Catalent"). Having carefully considered the parties' papers, relevant legal authority, the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS Catalent's motion for the reasons set forth below.

## BACKGROUND

Plaintiff BeSweet Creations, Inc. d/b/a SugarbearPRO ("BeSweet") filed this action arising out of Catalent's alleged misconduct in manufacturing BeSweet's vitamin-based supplements. For purposes of this motion, the Court accepts BeSweet's allegations as true. On Catalent's motion for judgment on the pleadings, the Court dismissed BeSweet's claims based on breach of contract and warranties with leave to amend. While BeSweet alleged that each purchase order and Catalent's shipment of product for each order constituted an independent written contract, the Court found that it was unclear whether BeSweet alleged that the same terms were in each separate agreement and/or how Catalent allegedly breached each separate agreement. The Court explained that, in any amended complaint, BeSweet should take care to explain the timing and

essential terms of each individual contract and how Catalent allegedly breached such terms. In addition, the Court noted that BeSweet should take care to plead how and when it provided sufficient notice to Catalent under Chapter 2 of the Uniform Commercial Code ("UCC"), as implemented in the California Commercial Code, for the sale of goods. The Court also dismissed with leave to amend BeSweet's claims for fraud, fraudulent inducement, and negligent misrepresentation based on BeSweet's failure to allege the circumstances of the alleged fraud with particularity. In addition, the Court noted that BeSweet needed to allege "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (Dkt. No. 69 (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)). Finally, the Court dismissed BeSweet's equitable claims based on its failure to allege that it did not have an adequate legal remedy and BeSweet's claim for unjust enrichment on the additional grounds that it failed to plead this claim as an alternative quasi-contract claim.

BeSweet filed its First Amended Complaint ("FAC"). (Dkt. No. 73.) Catalent again contends that BeSweet fails to sufficiently allege any claim. (Dkt. No. 82.)

**ANALYSIS**

**A.      Applicable Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than

United States District Court
Northern District of California

a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice, such as matters of public record, may be considered on a motion to dismiss.  *See Harris v. Cnty of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2011).  In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

**B.      Catalent's Motion to Dismiss.**

**1.      BeSweet's Claims Based on Contract and Warranty.**

As the Court clarified at the hearing on the motion to dismiss, the parties agree that BeSweet's alleged contract and warranty claims are subject to Article 2 of Uniform Commercial Code as adopted by California regarding the sale of goods.  Therefore, there are certain requirements with which BeSweet must comply to state its contract-related claims.

"'[I]f the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may' reject the goods, accept the goods, or accept any commercial units and reject the rest of the goods delivered." *Carson Indus., Inc. v. Am. Tech. Network, Corp.*, 2015 WL 12661953, at *4 (N.D. Cal. Sept. 26, 2015) (quoting Cal. Com. Code § 2601).  However, "rejection 'is ineffective unless the buyer seasonably notifies the seller." *Id*. (quoting Cal. Com. Code §

United States District Court
Northern District of California

2602(1)).  To recover for damages for defective goods, "[t]he buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."  Cal. Com. Code § 2607(3)(A).  Thus, to state a contract-related claim, BeSweet must plead that it provided Catalent notice of the alleged breach within a reasonable time after it discovered the breach.  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011).  "The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court."  *Id*. (citing *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.,* 169 Cal. App .4th 116, 135 (2008)).  The required notice "must set forth the nonconformity in the goods materially impairing their value to the buyer.  The content must also inform the seller that the buyer does not wish to keep the goods.  If the buyer equivocates in word or in deed, its purported revocation may be invalid."  *Carson Indus.*, 2015 WL 12661953, at *4 (citation and quotation marks omitted).

In its First Amended Complaint, BeSweet alleges that, in October 2021, a BeSweet executive emailed a Catalent manager "about growing consumer complaints about the color of the Hair gummies. . . ."  (Dkt. No. 73 at ¶ 35.)  In November 2021, BeSweet notified Catalent again about the deformed Hair gummies and then about discoloration of the Sleep gummies.  (*Id*. at ¶¶ 36, 37.)  Notably, BeSweet does not allege that it asked for a refund or stated that it was sending the product back to Catalent.  And BeSweet alleges that it continued to place new purchase orders.  (Dkt. No. 73.)[1]

BeSweet asserts several arguments as to why its allegations are sufficient to provide notice, none of which are persuasive.  First, BeSweet contends that the determination as to whether it complied with the notice requirements is a fact-specific determination that cannot be made at this procedural stage.  However, at this procedural stage, BeSweet needs to *allege* compliance with the notice requirement.  *See Alvarez*, 656 F.3d at 932.  It has not yet done so.

Second, BeSweet argues that the parties modified the requirements under the Commercial

---

[1] BeSweet alleges and argues that it continued to do so because Catalent allegedly concealed the depth of its problems and inability to provide compliant product.  However, such allegations would be relevant to BeSweet's *fraud* claims.  Moreover, at no other point does BeSweet allege that it provided notice of revocation.

United States District Court
Northern District of California

United States District Court
Northern District of California

Code through their conduct or contracts. BeSweet alleges that the parties agreed to not require formal notice or revocation under the Commercial Code. (Dkt. No. 85 (citing Dkt. No. 73 (First Amended Compl.) at ¶¶ 35-37.) However, even if the parties could agree to alter the notice and revocation requirements under the Commercial Code, BeSweet does not actually include such allegation. Instead, it merely alleges that, when it notified Catalent of the alleged defects, Catalent apologized and said that it would investigate. (Dkt. No. 73 at ¶¶ 35-37.) BeSweet further argues that it alleges that Catalent did not demand compliance with the Commercial Code. (Dkt. No. 85 (citing Dkt. No. 73 at ¶ 41.) However, BeSweet does not cite to any authority to show that Catalent had any obligation to demand compliance.

Third, BeSweet argues that it alleges it provided notice the defects, "with the clear implication that those products were unacceptable." (Dkt. No. 85 (citing Dkt. No. 73 at ¶¶ 33-37).) However, as discussed above, merely noting defects is insufficient. BeSweet was required to provide notice of *revocation* and to plead that it did so. *See Carson Indus., Inc. v. Am. Tech. Network, Corp.*, 2015 WL 12661953, at *4 (N.D. Cal. Sept. 26, 2015) ("In order to provide a proper rejection, a party must 'take such steps as may be reasonably required to inform the other in ordinary course' that they have rejected the goods.") (quoting Cal. Com. Code § 1201(26)); *In re Indesco Int'l, Inc.*, 451 B.R. 274, 303 (Bankr. S.D.N.Y. 2011) (Under UCC, "[a] buyer's mere complaint about the goods does not constitute clear and unequivocal act of rejection.") (citation and quotation marks omitted). Moreover, if a buyer equivocates its revocation "in word or in deed, its purported revocation may be invalid." *Id*. (quoting WHITE & SUMMERS § 8-4 (4th ed. 1995)); *see also China Nat. Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*, 141 F. Supp. 2d 1013, 1024 (C.D. Cal.) (holding that continuing to place orders was inconsistent with rejection), *vacated on other grounds,* 155 F. Supp. 2d 1174 (C.D. Cal. 2001). "Cases . . . have consistently held that by continuing to order and use the non-conforming goods delivered by the seller, the buyer has accepted the goods despite their nonconformity." *China Nat. Metal Prod.*, 141 F. Supp. 2d at 1025 (citing cases).

At the hearing, BeSweet argued that notification of a latent defect was sufficient to constitute revocation, citing *Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*, 2017 WL

10591885 (C.D. Cal. Mar. 3, 2017).  However, while BeSweet *argues* that it alleges a latent defect, the defects it actually alleges are not latent but rather patent.  BeSweet alleges that the products Catalent sent were defective in their look (color and shape), consistency, and taste, all of which are patent defects.  (Dkt. No. 73 at ¶¶ 4, 6, 8, 11, 35, 37, 38.)  While BeSweet alleges these defects were caused by deficiencies in Catalent's equipment, facilities, quality control, and ingredient changes, ultimately, BeSweet was unhappy because the product did not look, taste, or feel correct.  (*Id*. at ¶¶ 5, 8, 10.)

Additionally, *Tabletop Media* does not hold that simply notifying the seller of a latent defect satisfies the revocation requirement.  Instead, in *Tabletop Media*, the buyer alleged that as soon as it discovered the breach, the company reached out and sought replacements for the product, but the seller "unambiguously" refused to fix the defect.  2017 WL 10591885, at *8.  The court held that, under such circumstances, "formal" revocation was not required.  *Id*.  BeSweet does not allege any equivalent facts.

Finally, BeSweet argues that notice is not required where, as it contends here, the seller has actual notice of the defect.  However, the cases on which it relies, *Zakikhani v. Hyundai Motor Co.*, 2022 WL 1740034, at *10 (C.D. Cal. Jan. 25, 2022) and *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 800 (N.D. Ill. 2016), are inapplicable.  Those cases hold that notice is not required when injured consumers are suing manufacturers with whom they have not dealt and the manufacturers have actual notice.  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (citing *Greenman v. Yuba Power Prods.,* 59 Cal.2d 57, 61 (1963).  BeSweet is not an injured consumer and the parties started working together in 2021.

Upon review of the First Amended Complaint, the Court finds that BeSweet does not allege that it gave notice to Catalent that it was rejecting the products.  Accordingly, the Court grants the motion to dismiss BeSweet's contract-related claims: breach of contract, breach of warranty, and breach of the implied covenant of good faith and fair dealing.  However, because it would not be futile to do so, the Court will provide BeSweet with another opportunity to amend its claims.  If BeSweet elects to amend its contract-related claims, it should also take care to allege facts sufficient to show how an oral agreement or one made through conduct with Catalent's

6

predecessors to incorporate compliance with BeSweet's specifications into contracts created by the purchase orders, may be attributed to Catalent and that BeSweet and Catalent had a meeting of the minds on the alleged essential terms of the contracts.

### 2.    BeSweet's Tort Claims.

The statute of limitations on BeSweet's tort claims for fraud, fraudulent inducement, and negligent misrepresentation is three years.  *See* Cal. Civ. Code § 338(d).  It is undisputed that BeSweet's tort claims are barred by the statute of limitations unless the discovery rule applies.

Actions ordinarily accrue on the date of injury.  *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (1988).  However, under the discovery rule, "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." *Id*.  As the California Supreme Court explained:

> Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person *on inquiry* . . . . A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (emphasis in original) (quotation marks and citations omitted).  To demonstrate that the discovery rule is applicable, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis in original) (citations and quotation marks omitted).

BeSweet does neither.  In its First Amended Complaint, BeSweet alleges that the products were defective starting in 2021, and BeSweet suspected, at that time, that Catalent was the one who caused those defects by providing products that were the wrong taste, color, texture.  BeSweet alleges that, months after Catalent acquired the Hillside Facility in 2021, Customers began to notice problems with the color, texture, taste, and shape of BeSweet's products.  (Dkt.

United States District Court
Northern District of California

7

No. 73 at ¶¶ 3, 4; *see also* subheading C on page 8 ("Fall 2021: A Flood Of Customer Complaints About Taste, Color And Texture Undermine The BeSweet Brand"); ¶ 33(i) (alleging in September 2021, BeSweet's buyer complained that "every single bottle of all 17 boxes of Women's Multi are in very bad condition" and sent pictures of gummies with wrong color and a "melty or moldy appearance"); ¶ 33(ii) (alleging in October 2021, a buyer complained about a "funny green color, not the normal blue"); ¶ 33(iii) (alleging in September 2021 a buyer complained of "bears changing gray quicker than others"); ¶ 35 (alleging that BeSweet emailed Catalent about "growing consumer complaints" and that, in addition, the new product shipment sent by Catalent was "all green") and noting an additional consumer complaint about the color); ¶ 37 (alleging in late 2021 BeSweet again notified Catalent about discoloration problems with another product, including that nearly every bottle of one shipment lot had discolored gummies).)

BeSweet's fraud-related claims assert that Catalent concealed information related to the reasons why the products were defective. BeSweet alleges that "Catalent knew at that time and concealed from BeSweet, [sic] there were major deficiencies in the equipment, facilities and quality control at the Hillside Facility[]" which "rendered the facility unable to ensure consistent quality production." (*Id*. at ¶ 5.) BeSweet further alleges that Catalent also concealed that it changed the proportions of the ingredients, which contributed to "undermin[ing] the look, consistency and taste of BeSweet's products." (*Id*. at ¶ 6; *see also* ¶ 38 (alleging that during the communications between BeSweet and Catalent in 2021, Catalent was aware of, but concealed, deficiencies in the Hillside Facility's manufacturing facility and quality control that prevented Catalent from providing consistent quality in its products[,]" including "variations in the appearance, color, taste and other qualities"); ¶¶ 39, 42, and 44 (alleging phone calls in late 2021 and early 2022 in which Catalent "concealed inherent deficiencies in Catalent's facility and procedures".) These are the same paragraphs Catalent points to in support of its argument that it alleged Catalent's fraud by omission with sufficient particularity. (Dkt. No. 85 (BeSweet's Opp. at p. 19).)

BeSweet alleges, generally, that it did not discover that this information was concealed until 2023. (Dkt. No. 73 at ¶ 83 ("BeSweet did not discover the falsity of these negligent

United States District Court
Northern District of California

misrepresentations until 2023."; ¶ 96 ("BeSweet did not discover the full truth about the composition of the products, and their resulting lack of merchantability, until 2023 and 2024.").) These conclusory allegations fail to any details as to when, and is completely silent as to how, BeSweet made this discovery. Thus, BeSweet's allegations fail to "specifically plead" the necessary facts to demonstrate the first prong of the discovery rule.

Second, BeSweet does not, and cannot allege in light of its allegations, facts that, if true, would show that it was unable to have discovered this information earlier despite reasonable diligence. In light of the alleged "flood" of consumer complaints it allegedly received in 2021 and the patent nature of theses defects, BeSweet was on notice in 2021 that there were problems with Catalent's production of BeSweet's products.

In an effort to demonstrate that BeSweet sufficiently alleged that it was not on notice until later, BeSweet cites cases where the plaintiff was not aware that the defendant was at fault in any manner until later. For example, in *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005), the plaintiff sued a *surgeon* for medical malpractice for the *surgeon's* acts but did not discover that the *manufacturer* of the stapler used during her surgery was at fault until later. The plaintiff alleged and the California Supreme Court held it was sufficient that she did not discover or suspect that the *stapler manufacturer* was the cause of her injury until the surgeon testified that the stapler had caused post-surgery leaks in other, previous, surgeries. *Id*. at 811. As the court explained, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." *Id*. at 813.

In contrast, BeSweet did not discover a different injury caused by a different source. For its fraud claims, BeSweet still seeks to sue the same defendant – Catalent – for the same defective products. The only purportedly new information BeSweet alleges it discovered was the reason that Catalent's production was deficient, Catalent's facilities and procedures. That information does not constitute a different kind tortious conduct of a "wholly different sort".

The other cases on which BeSweet relies further demonstrate that its discovery of its fraud claims was not delayed. (Dkt. No. 85 (citing *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405

9

(9th Cir. 1994); *Unjian v. Berman*, 208 Cal. App. 3d 881 (1989); *Kilburn v. Pineda*, 137 Cal. App. 3d 1046 (1982).

In *Unjian*, the plaintiff did not initially suspect the surgeon of negligence causing his injuries. The court held that "[w]here, as here, the injury is obvious but there is nothing to connect that injury to defendant's negligence it cannot be said as a matter of law the plaintiff's failure to make an earlier discovery of fault was unreasonable." *Unjian*, 208 Cal. App. 3d at 885.

In *Ward*, while the plaintiff was aware of an arm and wrist injury, he did not suspect that a defective keyboard was the cause until later. The Ninth Circuit held that the statute of limitations on his claim against the keyboard manufacturer did not "begin to run until 'the plaintiff suspects or should suspect that her injury *was caused by wrongdoing, that someone has done something wrong to her.*'" *Ward*, 32 F.3d at 1408 (quoting *Jolly*, 44 Cal. 3d at 1110) (emphasis in *Ward*).

In *Kilburn*, the plaintiff sued a surgeon for medical malpractice. Although the back surgeries were not effective and caused her more pain than expected, the plaintiff did not suspect that the surgeon was at fault until she consulted with other doctors who explained the surgeon's errors. *Kilburn*, 137 Cal. App. 3d at 1048-50. Again, although the plaintiff was in pain, it was not clear until later that her injury had been caused by any *wrongdoing*.

Here, according to BeSweet's allegations, BeSweet believed, starting in 2021, that Catalent was at fault for producing defective products. Although BeSweet might not have had all the information regarding Catalent's production, the knowledge in 2021 that it accused Catalent of being at fault, put BeSweet on notice to investigate. Accordingly, the Court finds that BeSweet fails to allege and, in light of its allegations, cannot allege that the discovery rule applies. The Court, thus, finds that BeSweet's fraud claims are time-barred and grants Catalent's motion to dismiss these claims without leave to amend.

### 3. Plaintiff's Equitable Claims.

Catalent argues that both of BeSweet's equitable claims (unjust enrichment and violation of the California Business and Professions Code Section 17200, *et seq.*, the Unfair Competition Law (the "UCL") fail because Plaintiff fails to plead that it does not have an adequate remedy at law. "It is well-established that claims for relief under the . . . UCL are limited to restitution and

United States District Court
Northern District of California

United States District Court
Northern District of California

injunctive relief." *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146-49 (2003)).  Courts require factual allegations sufficient to show, if true, that legal damages would be insufficient to make the plaintiff whole.  *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 774 (N.D. Cal. 2024) (citing cases); *see also Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *13 (C.D. Cal. Nov. 23, 2020) (finding allegations insufficient where complaint was "devoid of substantive allegations showing Plaintiffs' legal claims would not provide them an adequate remedy.").

The Court previously granted Catalent's motion for judgment on the pleadings on BeSweet's equitable claims based on its failure to allege that its legal remedies were inadequate.  At the hearing, when asked where in its First Amended Complaint did BeSweet allege that its legal remedies were inadequate, BeSweet simply pointed to paragraph 100.  This paragraph states, in full:

> BeSweet's payments were pursuant to contracts entered into between the parties between June 2021 (starting with Purchase Order 145B for Hair gummies) and February 20235 (ending in Purchase Order 2078 for Sleep gummies).  To the extent those contracts are held invalid due to fraudulent inducement, and in the alternative to its breach of contract claim for those contracts, BeSweet asserts a quasi-contract claim for unjust enrichment.

(Dkt. No. 73 at ¶ 100 (footnote omitted regarding contracts in arbitration proceedings).)  This paragraph does not include any allegations to show, if true, why the damages BeSweet seeks would be insufficient to make it whole.  Merely pleading a claim in the alternative is not enough.  *Drake*, 2020 WL 7040125, at *14 ("a party does not avoid federal equitable principles merely because the equitable claim is pled in the alternative").

The Court, thus, grants Catalent's motion to dismiss as to BeSweet's equitable claims.  Because the Court is granting BeSweet leave to amend its contract-related claims, it will provide BeSweet one more opportunity to allege facts sufficient to show that its legal remedies would be inadequate.  However, because the Court is dismissing BeSweet's fraudulent inducement claim without leave to amend, BeSweet would need to allege a basis, other than fraud, to enable it to recover on a quasi-contract as an alternative to its breach of contract claim.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Catalent's motion to dismiss. The Court DIMISSES BeSweet's claims for fraud, fraudulent inducement, and negligent misrepresentation with prejudice and DISMISSES BeSweet's contract-related claims and its equitable claims with leave to amend. If BeSweet elects to file an amended complaint to cure these defects, it shall file an amended complaint by no later than September 8, 2026. The Court SCHEDULES a Further Case Management Conference on August 31, 2026, at 1:30 p.m. The parties shall file a further joint case management statement by no later than August 24, 2026.

**IT IS SO ORDERED**.

Dated: July 27, 2026



SALLIE KIM
United States Magistrate Judge

12